[Crim. No. 12803.   In Bank.   July 16, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. TINY H. ODOM, Defendant and Appellant.

Goldberg & Fisher, Arthur F. Fisher and David F. Goldberg for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Stephen Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—An information charged Tiny Odom with assault with intent to commit murder against James Lynn Maxwell. After a trial before a jury, the Kern County Superior Court convicted defendant of the lesser, but necessarily included, offense of assault with a deadly weapon. (Pen. Code, § 245.) After denying defendant's request for probation, the trial court entered judgment and sentenced defendant to state prison for the term prescribed by law (10 years maximum).[1]

---

[1] After the first Court of Appeal decision in this case, we granted defendant's petition for hearing and retransferred the case to the Court of Appeal for reconsideration in light of our decision in *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111]. The second Court of Appeal decision resulted in a reversal of defendant's conviction because of *Johnson* error, which the court found to be prejudicial. We granted the Attorney General's petition for hearing because, although the Court of Appeal reached the correct result, the opinion contained a questionable analysis of the reason why defendant had not "waived" any error below by his failure to request a limiting instruction. As we shall discuss *infra*, defendant was excused from making the useless gesture of requesting a limiting instruction: the law at the time of the trial of the case rendered the prior statements admissible for the truth of the matters asserted therein (Evid. Code, § 1235), and counsel had

■ We hold that the conviction must be reversed because the trial court committed prejudicial error in admitting certain prior, inconsistent, extrajudicial statements of a witness as substantive evidence of the truth of the matters asserted therein. In *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], we held that such extrajudicial statements admitted as substantive evidence against a criminal defendant violated his Sixth Amendment right to confront the witness. In the present case, the court admitted evidence of prior, inconsistent, extrajudicial statements of a witness, without an instruction limiting the jury's use of these statements to impeachment. In the light of our holding in *Johnson,* the court erred in failing to render a limiting instruction; furthermore, since the People have not sustained their burden of proving that the error was "harmless beyond a reasonable doubt" (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824]), the error caused prejudice.

The scene of the alleged crime was "Renie's" bar in Bakersfield. On the evening of December 4, 1966, defendant was sitting with a woman named Carla, when James Maxwell sat down next to Carla and ordered drinks. A conversation between Carla and Maxwell soon involved defendant; defendant and Maxwell exchanged obscenities. According to the two "victims," defendant jumped up, drew a knife, and made threatening gestures toward Maxwell, telling him he was going to "Cut his guts out." At this point, Maxwell's friend Lester White approached defendant and told him to put the knife away. Defendant slashed at White, cutting him slightly. Meanwhile, Maxwell attempted to assist White by throwing bar stools at defendant, backing him up against the wall. Finally, Maxwell jumped on defendant. Maxwell testified at trial that he attempted to seize the hand of defendant which held the knife; that defendant transferred the knife to his free hand and stabbed Maxwell twice, once in the abdomen

no reason to expect the significant change in the law effected by our decision in *Johnson.* (See generally, *People* v. *De Santiago* (1969) *ante,* pp. 18, 22-23, 27-28 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17].)

The Court of Appeal rested its conclusion that there was no waiver upon a finding that the trial court was under a duty on its own motion to give the limiting instruction, citing *People* v. *Hawkins* (1960) 177 Cal.App.2d 714 [2 Cal.Rptr. 524]. This analysis must fail because at the time of the trial in this case Evidence Code section 1235 explicitly authorized the admission into evidence of prior inconsistent statements of a witness without an instruction limiting the jury's use of them to impeachment.

and once near the heart. Defendant and Carla ran from the bar; Maxwell collapsed, and his wounds required hospitalization.

Defendant's version of the events at "Renie's" was quite different: he claimed he used the knife only in self-defense to protect himself against White and Maxwell. He testified at trial that, when he ran out of the bar with Carla, he was unaware that he had stabbed and seriously wounded Maxwell.

The bartender of "Renie's," Murrill Stanfill, testified for defendant. He characterized Maxwell and White as the aggressors in the brawl; his testimony effectively corroborated and substantiated defendant's position that he used the knife in self-defense. On cross-examination, the prosecutor referred to prior statements which Stanfill had made to a deputy sheriff. These statements apparently contradicted, in substance, Stanfill's in-court testimony. After Stanfill was excused, the prosecutor put on a rebuttal witness, the deputy sheriff to whom Stanfill had made the statements. The deputy identified a tape recording of the statements, and the prosecutor successfully obtained admission of the tape, which was subsequently played before the jury.

The trial court gave no warning or limiting instruction which could have restricted the jury's reliance upon the prior statements to impeachment only. In *People* v. *Johnson, supra*, 68 Cal.2d 646, 651 & fn. 4, 658-661, we held that the introduction against a criminal defendant of prior inconsistent statements of a witness without an instruction from the court limiting the jury's use of the statements to impeachment violated that defendant's right to confront the witnesses against him guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. The constitutional defect in the jury's use of such statements as substantive evidence lies in denying the defendant the opportunity to cross-examine the witness before a contemporaneous trier of fact and concurrently with the making of the statement. (68 Cal.2d at p. 660.)

Nevertheless, in the present case the trial court failed to limit the jury's use of the statements to impeachment. Without such a limiting instruction, the jury was not informed that it should not rely upon the statements as substantive evidence; thus, susceptible of use as substantive evidence, the admission of the statements against defendant violated the principles set forth in *Johnson*.

We cannot accept the Attorney General's argument that

the present case can be distinguished from *Johnson* upon the ground that here neither court nor counsel urged the jury to consider the statements as substantive evidence, and the defendant's attorney in his closing argument remarked that the prosecutor introduced the statements for impeachment purposes alone. In *Johnson*, argues the Attorney General, the trial court gave an affirmative instruction that the jury should consider the prior statements as substantive evidence. In *Johnson*, however, the trial court's instruction to consider certain statements as substantive evidence did not encompass all the statements introduced against the defendant. Recognizing that the trial court gave no such instruction to the jury concerning the prior *extrajudicial* statements of the witnesses, we noted, "but neither were the jury given any instruction . . . limiting such statements to impeachment purposes." (68 Cal.2d at p. 651 & fn. 4.)

In the present case, the jury received no instruction limiting such statements to impeachment purposes. In general instructions rendered at the end of the trial, the trial court told the jury that "in determining guilt or innocence of the defendant you are to be governed solely by the evidence introduced in this trial . . . ." "You are the exclusive judges of the facts and of the effect and value of the evidence, but you must determine the facts from the evidence received here in court."[2] These instructions, in effect, told the jury to consider all the evidence introduced at trial in reaching a decision as to defendant's guilt or innocence. In the absence of a specific instruction expressly limiting the jury's use of the extrajudicial statements to impeachment, "[a]n assumption that the jury considered this evidence only to measure credibility would be unrealistic." (*People* v. *Pierce* (1969) 269 Cal.App.2d 193, 204 [75 Cal.Rptr. 257]; accord, *People* v. *Vinson* (1969) 268 Cal.App.2d 672, 676 & fn. 2 [74 Cal.Rptr. 340].)

■ The fact that the attorney for defendant, in his closing argument, told the jurors that the People had introduced the extrajudicial statements "not to prove their case but so as to impeach him" does not cure the trial court's error in failing to render a limiting instruction. Counsel characterized the prosecution's tactics by this remark, implying that the

---

[2]The trial court did instruct that the jury could consider prior inconsistent statements of a witness in judging that witness's credibility. The court never stated, however, that the jury's use of such statements was exclusively limited to this purpose.

deputy district attorney should have called Stanfill in his case in chief; he also hoped to focus the jury's attention away from the substance of the statements. Regardless of what either counsel might have told the jury in final argument, the court specifically instructed the jury that "you must not consider as evidence any statement of counsel made during the trial. . . . ," and "it is your duty as jurors to follow the law as *I* shall state it to you." (Italics added.) Thus, counsel's argument was competent neither as evidence of the prosecution's *purpose* in introducing the statements, nor as guidance to the rules of law relevant to the jury's use of the statements.

The Attorney General finally points to a colloquy between the trial court and the prosecutor at the time the court admitted the tape into evidence. The court told the prosecutor: "May the record show, Mr. Allen, that in one sense it certainly is hearsay as to the defendant, it is merely for the purpose of impeaching a witness called by the defendant." Such a recital of the legal ground for the admissibility of the prior statements was, of course, incorrect at the time, as Evidence Code section 1235 provided that evidence (the tape) of such statements was "not made inadmissible by the hearsay rule." Nevertheless, the Attorney General argues that the trial court's statement cured the potential *Johnson* error.

Initially, we note that although the court made this comment in the presence of the jury it addressed itself to the prosecutor; the court did not in so doing purport to instruct the jury. Furthermore, despite the fact that the court referred to the purpose of the statements as being merely to impeach, we cannot conclude that the jury understood that its use of the evidence of the statements was limited to impeachment. Indeed, impeaching evidence often constitutes substantive evidence; one witness's statements at trial may impeach those of an earlier witness, and the jury may consider the former's testimony both for impeachment and as substantive evidence of the truth of the matter asserted in the statements—regardless of the *purpose* of the attorney who elicited the impeaching remarks.

The trial court's comment to the prosecutor is not a competent basis for curing the *Johnson* error for still another reason. The trial court instructed the jury, "At times throughout the trial the court has been called upon to pass on the question whether or not certain offered evidence might properly be admitted. You are not to be concerned with the

reasons for such rulings and are not to draw any inferences from them." Presumably, the jury obeyed this command and ignored the judge's remark to the prosecutor concerning the prior statements.

In the absence of an instruction explicitly limiting the jury's use of the prior statements to impeachment, the jury had no reason not to consider the statements as substantive evidence for the truth of the matters asserted therein. By reason of Evidence Code section 1235, the prior inconsistent statements are "not made inadmissible by the hearsay rule"; since the code provides that the statements are not "hearsay," they are evidence admissible as relevant evidence (Evid. Code, § 351), "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Under the Evidence Code at the time of trial, and under the judge's instructions, the jury could and should have considered the prior .statements as substantive evidence directly relevant to the question of defendant's guilt or innocence. Such use of prior statements prompted this court in *Johnson* to hold that Evidence Code section 1235, when used against a criminal defendant, violated his Sixth and Fourteenth Amendment right to confront the witnesses against him.

Because of the nature of this right of confrontation, we cannot accept the Attorney General's argument that since the *purpose* of counsel and the court in introducing and admitting the statements was "clearly" limited to impeachment,[3] the defendant cannot claim a denial of his right to confrontation under *Johnson*. The denial of confrontation arises from the jury's use of the statements as substantive evidence; thus, the court and counsel's intended purpose in submitting the statements to the jury must be irrelevant unless the court expressly limits the jury's use of the statements to the purpose for which they were introduced, i.e., impeachment. In the present case, the.trial court never expressed this limitation to the jury;[4] and its failure to do so constituted error.

[3]We do not adopt the Attorney General's position that all concerned "intended" that the jury consider the statements merely as impeachment. In fact, the record reveals no certain indication of the lawyers' purpose.

[4]Indeed, if the trial court had limited the jury's use of the statements to impeachment without a stipulation of both counsel authorizing such a limitation, the prosecutor could (but for the *Johnson* decision) claim error on appeal, since Evidence Code section 1235 purported to remove such statements from the operation of the hearsay rule. We must assume that the court and counsel knew the law as it stood at the time of the

We assume that counsel knew the law as it stood at the time of the trial. Accordingly, we can reasonably conclude that defendant's attorney did not request a limiting instruction because he knew that under section 1235 he was not entitled to one. For this reason, his failure to request the instruction does not constitute a waiver of the error on appeal; the request, at the time this case was tried, would have been futile. (See generally, *People* v. *De Santiago, supra, ante,* pp. 18, 22-23, 27-28; *People* v. *Kitchens, supra,* 46 Cal.2d 260, 262-263.) The subsequent change in the law rendered by *Johnson* was both substantial and unforeseeable: The change was substantial; *Johnson* vitiated the legislative mandate of section 1235 when used against a criminal defendant. The change was unforeseeable; the present trial occurred in the spring of 1967, and the United States Supreme Court decided the cases which led to our *Johnson* decision in 1968. (*Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748]; *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]; *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620].) Under such circumstances of justifiable reliance on the clear legislative mandate of Evidence Code section 1235, we cannot hold that counsel waived the error by failing to request the limiting instruction.[5]

Since the testimony goes to the jury without the curative instruction that the testimony cannot be accepted for the truth of its content, the constitutional vice inheres in it; the damage is done, and the only question that remains is whether the damage is sufficiently prejudicial. Because the error is of federal constitutional dimensions, we apply the test of prejudice laid down in *Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824]. Under that test, we have concluded that the People have not proved that the error was "harmless beyond a reasonable doubt"; a reasonable possibility exists that the error might have contributed to the conviction. (*Fahy* v. *Connecticut* (1963) 375 U.S. 85, 86-87 [11 L.Ed.2d 171, 172-173, 84 S.Ct. 229].) The main position

---

trial; therefore, even if the defendant had requested a limiting instruction, we can assume that the prosecutor would have successfully opposed such a request with the argument that section 1235 denies to the defendant a right to such limitation.

[5] We would be reluctant to find a waiver of *Johnson* error by reason of counsel's failure to request a limiting instruction in all cases in which the prior statements were introduced between the effective date of the Evidence Code, January 1, 1967, and the date we filed the decision in *Johnson,* May 28, 1968.

of the defendant at trial was that he used the knife in self-defense. Stanfill's in-court testimony tended to establish defendant's theory of self-defense: Stanfill stated that White and Maxwell backed defendant up against the wall, threatened him, and threw chairs at him. In the prior statements Stanfill characterized the defendant as the aggressor in every respect; tape recordings of these statements were played to the jury; the substance of these statements undermined defendant's position that he acted in self-defense.

The admission of these statements as substantive evidence was clearly prejudicial. Under *Chapman* it is not necessary to determine whether the jury in fact relied on the evidence erroneously before it, but only whether the jury could have relied upon such evidence to convict the defendant. Nevertheless, the jury in the present case indicated that it attached special significance to the Stanfill statements; while deliberating, the jury requested and obtained permission to replay the recording of the statements. Aside from the three participants in the brawl (defendant, White, and Maxwell), Stanfill was the only eyewitness who stood as a neutral observer of all the events surrounding the stabbing; his version of the relevant facts would necessarily carry great weight with the jury. In view of the close balance of the evidence as to the question of self-defense, we conclude that the introduction of Stanfill's statement that defendant was the aggressor must, in the absence of the proper limiting instruction, constitute clear prejudice under *Chapman*.

The judgment is reversed.

Traynor, C. J., Peters, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. Petitioner's felonious assault was shown by abundant eyewitness testimony wholly independent of the statement used to impeach the witness Stanfill. That petitioner was not acting in self-defense when he commenced his sudden knife attack upon the victim Maxwell was clearly shown by the testimony of the bystanders.

I find no reasonable doubt that the jury's consideration of the impeaching statement as substantive evidence was harmless under the application of the *Chapman* test. (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].)

McComb, J., concurred.