[Crim. No. 15967. Second Dist., Div. Four. Oct. 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JERRY DEAN HARRISON, Defendant and Appellant.

## COUNSEL

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Melvin R. Segal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—This appeal following a jury trial is from conviction under two counts, one a felony and one a misdemeanor. Both counts were under the Control of Deadly Weapons law, the felony being a violation of Penal Code

section 12021 and the misdemeanor a violation of Penal Code, section 12031 subdivision (a). Three contentions are advanced.[1]

### I. *Was The Evidence Sufficient To Sustain The Conviction?*

Section 12021 of the Penal Code makes it a felony for any person, previously convicted of a felony, to own, possess or have "under his custody or control any . . . revolver . . . capable of being concealed upon the person." Such a revolver is here involved (Pen Code, § 12021) but appellant, an admitted felon, contends he did not own, possess, control it or have it in his custody.

Under Penal Code, section 12031 subdivision (a) it is a misdemeanor for any person not exempted by subdivision (b) to carry a loaded firearm "in a vehicle . . . on any public street . . .". Appellant contends there is no evidence that he knew a firearm, loaded or unloaded, was in the car he drove so that his conviction must fall.

A recital of the evidence is thus made necessary. About 7:30 a.m. on Sunday morning, November 26, 1967, Los Angeles Police Officers Barry and Fox were traveling westbound on 48th Street when an automobile traveling southbound on Arlington was seen speeding through a red light. Appellant was driving the car. Officer Barry drove the police vehicle up behind the car and turned on his red light. A second or two later appellant was observed to look back over his shoulder. There were no cars parked along the curb of Arlington and traffic was "very, very light" but he continued driving for approximately one block before making a right turn on 52d Street where he finally pulled to the curb about 100 feet from the corner.

When the vehicle stopped, Officer Barry walked up on the driver's side and asked appellant for his driver's license and vehicle registration but appellant was unable to produce either. He then asked appellant to walk to the rear of the vehicle which he did, telling the officer that the car belonged to his half-brother.

Billy Don Montgomery (also known as Virgil Harper) occupied the right front seat of the car and between him and appellant sat Cheril Blackwell. While Barry was interviewing appellant, Montgomery opened the right door of the car and stepped out, starting to walk to the rear. As he did so, the other officer walked forward and, through the open door, observed the butt of a revolver protruding from beneath the right front seat. He called to Officer Barry, saying, "Come up here; I have something to

---

[1]Anticipating the possibility respondent would raise a technical objection to his appeal, appellant notes his notice of appeal gives an incorrect date for the entry of the judgment appealed from, and argues its lack of consequence. However, respondent, making no point of it, concedes that the validity of the notice of appeal is unaffected by the error. We agree.

show you" upon which appellant uttered a common phrase of disconsolate disgust. When Officer Barry reached the right front door he, too, saw the pistol and removed it. It was a Ruger revolver containing five live rounds and one expended cartridge.

Appellant was observed by the officer to be wearing a jacket reaching below the waist area. Montgomery was dressed in a shirt and trousers and his jacket was seen lying on the back seat.

For the defense, Montgomery testified the pistol was his and that he purchased it approximately 10 days beforehand and when purchased it was loaded, though one cartridge had apparently been fired. He testified he carried the gun into the car in his belt and that he was wearing his jacket at all times, covering it. He never showed the weapon to appellant or mentioned it to him. Montgomery testified that he removed the gun from his belt and placed it under the car seat when appellant was outside the car. He also testified that he had never sustained a felony conviction at the time of the occurrence.

Appellant took the stand and, so far as here pertinent, testified to his complete ignorance of the fact Montgomery had a gun or that it was in the car. He admitted to having been convicted in 1961 of three counts of armed robbery and, in 1965, of burglary.

In rebuttal the prosecution called another officer who held a brief conversation with Montgomery at a time Montgomery was under arrest. At that time Montgomery stated, "The only thing I want to say is I don't know anything about that gun, and I don't know anything about any robbery beef . . . ."

From the evidence that defendant failed to stop immediately after seeing the red light, though the curbing was free of parked cars, and from the expression he uttered when it appeared Officer Fox probably had seen the gun (there being nothing else in the car to cause appellant concern) a jury readily could infer knowledge of the weapon's presence. As he was driving a car he had borrowed, he obviously had control and custody of the revolver.

There was ample basis for disbelieving Montgomery's testimony that the gun in his belt was concealed by his jacket, as there was evidence he was not wearing his jacket. From his statement after the occurence, denying knowledge of the gun, the jury could conclude the gun was not Montgomery's or carried by him. The further fact he had sustained no prior felony convictions lends itself reasonably to the conclusion that he willingly would take a misdemeanor "rap" to save appellant from the more serious felony charge.

The jury was not required to believe either appellant or Montgomery. *People* v. *Hunt* (1963) 221 Cal.App.2d 224, 227 [34 Cal.Rptr. 421]; *People* v. *Garcia* (1960) 187 Cal.App.2d 93, 102 [9 Cal.Rptr. 943].

■ Of course, disbelief of testimony, standing alone, merely discredits that testimony and does not create proof of the contrary. *Oldenburg v. Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742 [314 P.2d 33]. Here the behavior of appellant, irrespective of his or Montgomery's testimony, permitted an inference of guilty knowledge to be drawn by the jury.

■ The determination of the credibility of witnesses and the inferences to be drawn from the evidence are matters within the province of the trier of fact. *People* v. *Ortiz* (1962) 210 Cal.App.2d 489, 497 [26 Cal. Rptr. 677]. ■ Furthermore, it is the rule that "Where the circumstances in evidence are such as would reasonably justify an inference of guilt, and the court so found, the fact that an inference of innocence might also just as reasonably have been predicated on such circumstances does not present a question of law reviewable by an appellate court." *People* v. *Nieto* (1966) 247 Cal.App.2d 364, 368 [55 Cal.Rptr. 546], cert. denied (1967) 387 U.S. 911 [18 L.Ed.2d 632, 87 S.Ct. 1698]. It is not necessary that there be direct evidence establishing knowledge of a gun's presence on the part of appellant, since such may be established circumstantially. *People* v. *Hunt* (1963) *supra,* at page 227.

■ The evidence, and permissible inferences to be drawn from it, was sufficient to establish appellant's guilt under either section of the Penal Code. ■ Furthermore, Penal Code section 12031, subdivision (a), does not require knowledge that the gun was loaded, as the statute prohibits the carrying of a loaded firearm and does not specify knowledge it is loaded as an element of the crime. Appellant does not contend the contrary.

II. *Did The Trial Court Err In Failing To Instruct The Jury, Sua Sponte, As To The Effect Of Inconsistent Testimony Of A Witness?*

■ Since the decision in *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], cert. denied (1969) 393 U.S. 1051 [21 L.Ed.2d 693, 89 S.Ct. 679], it is the rule of a criminal trial that prior inconsistent statements of a witness, made out of the trial court, are admissible only to impeach the witness's credibility. In the case at bench, appellant points to Montgomery's out-of-court statement to the police officer and correctly argues that the rule applies. ■ Appellant did not request any instruction to the jury limiting the effect to be given such testimony, but now contends the trial court erred in failing to give such an instruction, of its own drafting and volition. We disagree, and conclude appellant waived any error by failing to request the instruction.

At this writing *People* v. *Odom* (1969) 71 Cal.2d 709 [78 Cal.Rptr. 873, 456 P.2d 145], is the latest Supreme Court discussion of the problem, holding that the trial court's failure so to instruct was error. Additionally, it

was found there had been no waiver of error since a contrary rule had theretofore prevailed and appellant was not then in position to request the instruction. Pursuant to the dictates of *Odom* there is now no doubt such instruction should be given, if requested.

At the time of our trial, however, the *Johnson* rule had been established and there was no reason why, pursuant to it, appellant should not have requested the instruction, if desired. This factor distinguishes our case not only from *Odom* but from three later cases, namely, *People* v. *Neese* (1969) 272 Cal.App.2d 235 [77 Cal.Rptr. 314]; *People* v. *Pierce* (1969) 269 Cal.App.2d 193 [75 Cal.Rptr. 257] and *People* v. *Vinson* (1969) 268 Cal.App.2d 672 [74 Cal.Rptr. 340].

 While it is true that a court should, of its own volition, instruct on the general principles of law pertinent to a criminal case, it need not instruct *sua sponte* on specific points. (Generally, see: Witkin, Cal. Criminal Procedure (1963 ed.) 477-479, §§ 471, 472.) *People* v. *Sutton* (1964) 231 Cal.App.2d 511 [41 Cal.Rptr. 912], held that a failure to instruct on distinctions between prior convictions of misdemeanors and felonies for impeachment purposes was not error where appellant failed to request the same. And in *People* v. *White* (1958) 50 Cal.2d 428 [325 P.2d 985], appellant asserted a claim nearly identical with that asserted in our case. The court stated (p. 430): "The rebuttal evidence was admissible to impeach them, but there was no request that it be limited to this purpose, and the jury was not so instructed. In the absence of such a request there was no duty upon the trial court to instruct the jury that the rebuttal testimony was admissible solely for the purpose of impeaching Hanick and Conover. [Citing cases.]"

 "By his failure to request additional instructions or any clarification thereof, he waived his right to complain of any such omission on appeal. [Citing cases.]" *People* v. *Wren* (1969) 271 Cal.App.2d 788, 793 [76 Cal.Rptr. 673]. The rule just quoted applies in the present case.

III. *Did Appellant's Sentencing For The Two Crimes Constitute Double Punishment?*

 Penal Code section 654 prohibits double punishment for the same act or omission. *In re Hayes* (1969) 70 Cal.2d 604, 607 [75 Cal.Rptr. 790, 451 P.2d 430] observed this refers ". . . not to *any* physical act or omission which might perchance be common to all of a defendant's violations, but to a defendant's *criminal* acts or omissions." There, the non-criminal act of driving was common to the two offenses, but it was held the

criminal acts of driving without a valid license and driving while under the influence of intoxicants were separate criminal acts for both of which Hayes could be punished. *In re Hayes* commented that a person in possession of two different narcotics may be punished for two separate crimes, though his sole physical act was possession, only.

In our case, appellant argues he possessed or controlled but one object, the revolver, and yet was punished for two crimes only because he was an ex-convict driving a car. We note these distinctions: Penal Code section 12021 applies only to a person previously convicted of a felony and who owns or has custody, control or possession of a concealable firearm, loaded or unloaded and whether in a vehicle or not; so long as he owns or has custody, control, or possession of it, such a weapon need not be on his person or in his vehicle. The lesser offense proscribed by Penal Code section 12031, however, applies to any person and to any firearm, concealable or not, but only if it is loaded and he carries it either on his person or in a vehicle. Neither ownership, possession, custody or control is a statutory element in the unlawful carrying of a loaded firearm in a vehicle. A violation of Penal Code section 12031 is thus not a lesser offense necessarily included in the greater offense established by Penal Code section 12021. One of the tests sometimes used to determine if Penal Code section 654 applies (*People* v. *Knowles* (1950) 35 Cal.2d 175, 186-189 [217 P.2d 1], cert. denied (1950) 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117] therefore is not met.

The two statutes strike at different things. One is the hazard of permitting ex-felons to have concealable firearms, loaded or unloaded; the risk to public safety derives from the type of person involved. The other strikes at the hazard arising when any person carries a loaded firearm in public. Here, the mere fact the weapon is loaded is hazardous, irrespective of the person (except those persons specifically exempted) carrying it.

The "intent or objective" underlying the criminal conduct is not single, but several, and thus does not meet another of the tests employed to determine if Penal Code section 654 is violated. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19-20 [9 Cal.Rptr. 607, 357 P.2d 839], cert. denied (1961) 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708].) For an ex-convict to carry a concealable firearm is one act. But loading involves separate activity, and while no evidence shows that appellant personally loaded the pistol, there seem little distinction between loading and permitting another to do so. Thus, two acts, not a single one, are necessarily involved and bring our case outside the prohibition against double punishment for a single act or omission. We therefore hold contrary to appellant's contentions on this point.

Judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.