[No. A025143. First Dist., Div. Four. Apr. 9, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
MOSES DILLARD, JR., Defendant and Appellant.

262

**COUNSEL**

James R. Jenner, Public Defender, Allan Hymer, Assistant Public Defender, and Louisa Havstad, Deputy Public Defender, for Defendant and Appellant.

John J. Meeham, District Attorney, and Ralph Countryman, Deputy District Attorney, for Plaintiff and Respondent.

---

## OPINION

**PANELLI, J.**—A jury found Moses Dillard, Jr., guilty of the misdemeanor offense of carrying a loaded firearm on his person in a public place, in violation of Penal Code section 12031, subdivision (a). On appeal from the judgment of conviction, the appellate department of the superior court affirmed. On application of the parties, the court certified the case for transfer to this court. (Cal. Rules of Court, rule 63.) ██ The question presented is whether knowledge that the firearm is loaded is an element of the offense of carrying a loaded firearm in a public place.[1] (Pen. Code, § 12031, subd. (a).) We hold that such knowledge is not an element of the offense and affirm the judgment.

In the early morning hours of June 1, 1981, Oakland Police Officer Luis Torres observed appellant riding a bicycle on the 1300 block of 100th Avenue in Oakland. Appellant was carrying what appeared to be a rifle case. Torres activated the lights on his patrol car and asked appellant to stop. Appellant complied. In response to the officer's request, he placed the rifle case on the ground, stepped away from it, and stood by the patrol car.

Officer Torres unzipped the rifle case and lifted out the rifle. The rifle, a 30.30 Winchester, had one round of ammunition inside the chamber and six additional rounds inside the cylinder. Seven more rounds were loose in the case.

Appellant testified that the rifle belonged to him and that he had picked it up from his stepfather's house about three hours before he was stopped. He did not open the carrying case between the time he picked up the weapon and his stop by Torres.

Relying on *People* v. *Harrison* (1969) 1 Cal.App.3d 115, 120 [81 Cal.Rptr. 396], the court ruled inadmissible as irrelevant evidence tending to show that appellant was unaware that the rifle was loaded. The court rejected defense counsel's offer of proof, outside the presence of the jury,

---

[1] Appellant contends that the issue is whether mistake of fact is a defense, whereas respondent contends it is whether knowledge is an element of the offense. The superior court has certified both issues to this court. For the reasons stated in the last paragraph of this opinion, this court is of the opinion that the only issue presented is whether knowledge is an element of the offense.

that appellant's stepfather had taken the rifle hunting, that appellant had loaned it to him for this purpose on several prior occasions, that his stepfather had never before returned the rifle to appellant loaded, and that on the day of the offense appellant had acted in reliance on his stepfather's past conduct. Over defense objection, the court instructed the jury that knowledge that the weapon is loaded is not an element of the offense of violating Penal Code section 12031, subdivision (a) (CALJIC No. 16.470). The court refused appellant's requested instructions concerning joint operation of act and intent (CALJIC No. 3.31.5), the meaning of "knowingly" (CALJIC No. 1.21), and ignorance or mistake of fact (CALJIC No. 4.35).

Penal Code[2] section 12031, subdivision (a) provides in pertinent part: "Except as provided in subdivision (b), (c), or (d) [not here applicable], every person who carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street . . . is guilty of a misdemeanor." In *People* v. *Harrison, supra,* the court in dictum stated that the section "does not require knowledge that the gun was loaded, as the statute prohibits the carrying of a loaded firearm and does not specify knowledge it is loaded as an element of the crime." (1 Cal.App.3d at p. 120.) Appellant argues that to construe section 12031 as not requiring knowledge that the weapon is loaded violates his due process right to present a defense (see *Chambers* v. *Mississippi* (1973) 410 U.S. 284, 294 [35 L.Ed.2d 297, 308, 93 S.Ct. 1038]), and violates the basic principle of common law, expressed in section 20, that to constitute a crime there must be a union of act and wrongful intent (see *People* v. *Vogel* (1956) 46 Cal.2d 798, 801 [299 P.2d 850]).

In *United States* v. *Balint* (1922) 258 U.S. 250 [66 L.Ed. 604, 42 S.Ct. 301], the Supreme Court stated: "While the general rule at common law was that the *scienter* was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it [citation], there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court." (*Id.,* at pp. 251-252 [66 L.Ed. at p. 605]. See also *Morissette* v. *United States* (1952) 342 U.S. 246, 250-258 [96 L.Ed. 288, 293-297, 72 S.Ct. 240] [historical review].)

In California the common law concept of scienter, or mens rea (see *Morissette* v. *United States, supra,* 342 U.S. at p. 252 [96 L.Ed. at

---

[2]All further statutory references are to the Penal Code.

p. 294]), is codified in section 20.[3] (*People* v. *Hernandez* (1964) 61 Cal.2d 529, 532 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092].) "So basic is this requirement [of a union of act and wrongful intent] that it is an invariable element of every crime unless excluded expressly or by necessary implication." (*People* v. *Vogel, supra,* 46 Cal.2d at p. 801.) Nevertheless, notwithstanding the admonition of section 20 and the common law tradition upon which it is based, the courts, albeit with some reluctance, have recognized that certain kinds of regulatory offenses enacted for the protection of the public health and safety are punishable despite the absence of culpability or criminal intent in the accepted sense. (See *People* v. *Hernandez, supra,* 61 Cal.2d at p. 532 and cases cited; *People* v. *Vogel, supra,* 46 Cal.2d at p. 801, fn. 2.) "Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement." (*Ibid.* See generally 1 Witkin, Cal. Crimes (1963) Elements of Crimes, § 52 at p. 56, §§ 62-63 at pp. 66-68.) As the Supreme Court stated in *Morissette* v. *United States, supra*: "Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. . . . In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. *The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities.* . . . Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime." (342 U.S. at pp. 255-256 [96 L.Ed. at p. 296], italics added.)

 With these principles in mind, we consider whether it was the legislative intent to exclude knowledge that the weapon is loaded as an element of the offense of carrying a loaded weapon in a public place. Section 12031 was enacted in 1967 as one of a series of statutes directed to prohibiting the carrying of loaded weapons in specified public places. (Stats. 1967, ch. 960, §§ 1-4, pp. 2459-2462.) Other provisions of the 1967 act prohibited the carrying of a loaded weapon into the State Capitol, the office of any

---

[3]Section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."

legislator or constitutional officers, or on the grounds of any public school (§ 171c), and prohibited carrying a loaded weapon within the Governor's Mansion or on its grounds (§ 171d). The act was declared an urgency statute "necessary for the immediate preservation of the public peace, health or safety." (Stats. 1967, ch. 960, § 6, p. 2462.) As facts constituting such necessity, the Legislature cited the danger to the peace and safety of the people of this state from the increased incidence of organized groups or individuals publicly arming themselves, and the inadequacy of existing laws to protect the people from "either the use of such weapons or from violent incidents arising from the mere presence of such armed individuals in public places." (Stats. 1967, ch. 960, § 6, p. 2463.)

In light of this clear expression of legislative concern for the public safety as against the presence of armed individuals in public places, we conclude that section 12031, subdivision (a), by necessary implication excludes knowledge or criminal intent as an element of the offense. (Cf. *People* v. *Corkrean* (1984) 152 Cal.App.3d 35 [199 Cal.Rptr. 375] [Legislature consciously eliminated knowledge requirement in certain deadly weapon possessory offenses]; *People* v. *Daniels* (1953) 118 Cal.App.2d 340 [257 P.2d 1038] [knowledge of the automatic character of the rifle not an element of § 12220].) The carrying of a loaded weapon in a public place, we believe, falls within the class of cases involving " 'acts that are so destructive of the social order, or where the ability of the state to establish the element of criminal intent would be so extremely difficult if not impossible of proof, that in the interest of justice the legislature has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant. [¶] In these cases it is the duty of the defendant to know what the facts are that involved or resulted from his acts or conduct.' " (*In re 'Marley* (1946) 29 Cal.2d 525, 529 [175 P.2d 832].) Section 12031, subdivision (a), is, in our view, a quintessential public welfare statute which embraces a legislative judgment that in the interest of the larger good, the burden of acting at hazard is placed upon a person who, albeit innocent of criminal intent, is in a position to avert the public danger. (See *Morissette* v. *United States, supra,* 342 U.S. at p. 260 [96 L.Ed. at p. 298]; *United States* v. *Balint, supra,* 258 U.S. at p. 252 [66 L.Ed. at p. 605].)

The potential danger to the public safety from the prohibited conduct is dramatically illustrated by the facts of the instant case. Officer Torres, an expert in the operation and use of rifles, testified that the 30.30 Winchester is a "very high-powered rifle" that is primarily used for bear and deer hunting. As examples of the rifle's extraordinary force, he stated that one round fired would penetrate not only a police vest, "[i]t would go through the window, through the vest, through [the officer] and through the car." "If you were to line up six jurors and fire at the first one, the last one would

be fatally wounded." The weapon had no safety latch and the chances of its going off if it were dropped from appellant's bicycle were about 75 percent. Without question, society has a legitimate interest in placing on the possessor of such a weapon the burden of ascertaining at his peril that it is unloaded before he ventures forth with it in public. (See *United States* v. *Balint, supra,* 258 U.S. at p. 254 [66 L.Ed. at p. 606].) Moreover, one who carries such a weapon in ignorance of the fact that it is loaded could in some circumstances pose a greater threat to the public safety than one who wilfully violates the law by carrying the weapon with knowledge that it is loaded. The latter, at least, presumably would handle the weapon with the greater care its potential danger dictates, whereas the former would be unaware of the need for caution. Thus, if appellant, as he contends, were truly unaware that the rifle was loaded, the public safety was endangered by that very fact as he rode with it on his bicycle and when he placed it on the ground at Officer Torres' direction.

■ Appellant was presumed to know that it is unlawful to carry a loaded firearm in a public place. (Cf. *People* v. *Snyder* (1982) 32 Cal.3d 590, 593 [186 Cal.Rptr. 485, 652 P.2d 42] [defendant presumed to know the provisions of § 12021].) **(1c)** To avoid the sanction of the law, appellant need only have taken care to make certain that the weapon he carried was in fact unloaded—"no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." (*Morissette* v. *United States, supra,* 342 U.S. at p. 256 [96 L.Ed. at p. 296].)

■ Appellant's contention that to dispense with the requirement of knowledge violates his due process right to present a defense is meritless. Since knowledge that the weapon is loaded is not an element of the offense of violation of section 12031, subdivision (a), lack of such knowledge is not a defense. Hence, no right of appellant's was infringed. (See *United States* v. *Balint, supra,* 258 U.S. at p. 252 [66 L.Ed. at p. 605]. Cf. *Baender* v. *Barnett* (1921) 255 U.S. 224 [65 L.Ed. 597, 41 S.Ct. 271] [lack of knowledge of *possession* a defense]; *People* v. *Snyder, supra,* 32 Cal.3d at p. 592 [knowledge of possession is an element of § 12021].) Whether a good faith and reasonable mistake of fact would be a defense (see § 26, subd. Three) is not an issue presently before us. Appellant's offer of proof was deficient in that it showed only lack of knowledge, i.e., that he was unaware that the rifle was loaded and that, based on past experience with his stepfather, he believed it to be unloaded. ■ A mere belief, unsupported by a showing of due care and bona fide, reasonable effort to ascertain the facts, is insufficient to constitute a mistake of fact defense, (See *People* v. *Hernandez, supra,* 61 Cal.2d at p. 534; *People* v. *Vogel, supra,* 46 Cal.2d at pp. 808-809 (dis. opn. of Shenk, J.); *People* v. *Guthrie* (1983)

144 Cal.App.3d 832, 841 [193 Cal.Rptr. 54]; cf. *In re Marley, supra,* 29 Cal.2d at p. 530 [employer's vicarious criminal liability]. Compare *People* v. *Snyder, supra,* 32 Cal.3d at p. 595 [defendant made no effort to clarify her status] with *People* v. *Bray* (1975) 52 Cal.App.3d 494 [124 Cal.Rptr. 913] [defendant made repeated efforts to clarify his status].)

The judgment is affirmed.

Caldecott, P. J., and Poché, J., concurred.

A petition for a rehearing was denied May 3, 1984, and appellant's petition for a hearing by the Supreme Court was denied July 18, 1984.