752 P.2d 8

STATE of Arizona, Appellee,

v.

Clifford C. SPINKS, Appellant.

No. 1 CA–CR 9207.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 6, 1987.

Review Denied April 26, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel Crim. Div., and Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

S. Alan Cook, Phoenix, for appellant.

## OPINION

FIDEL, Judge.

The charges against the appellant-defendant Clifford C. Spinks included perjury before a state grand jury. At trial the state was permitted to place transcribed portions of grand jury testimony into evidence, some of it from witnesses who did not appear at trial. The transcripts were not admitted for the truth of the testimony that they contained. Rather, they were admitted to demonstrate, through questions posed to a number of grand jury witnesses, that the defendant's allegedly perjurious testimony concerned a subject material to the grand jury's inquiry. The defendant challenges admission of this evidence as a violation of his federal and state constitutional rights to confront adverse

witnesses; that challenge casts the issue on appeal.

In a trial by jury Clifford C. Spinks and his co-defendant Walter D. Maule were convicted of one count of conspiracy, one count of fraudulent schemes and practices, one count of perjury, and one count of false swearing. The court suspended imposition of sentence and placed Spinks on probation for four years. As a term of probation Spinks was ordered to serve one year of incarceration in the Maricopa County jail. Spinks filed a timely notice of appeal.

The facts, taken in the light most favorable to sustaining the verdict, are these. Spinks and his co-defendant Maule were Lieutenant and Chief of Police of the Winslow Police Department. On February 22, 1979, the Holbrook Police Department asked the Winslow Police Department to establish a roadblock to intercept a robbery suspect fleeing Holbrook. Winslow Police Officers Zukowski and Short set up the roadblock. Officer Short stood at the roadblock to stop and examine passing cars, while Officer Zukowski covered Short with a shotgun. At about 3:30 a.m. on February 23, 1979, the officers stopped a car. Officer Zukowski believed that the car matched the description of the suspect vehicle and that one of its occupants resembled the robbery suspect; however, Officer Short, his superior, permitted the potential suspects to drive on. Shortly afterwards Richard Martin approached by car. Short aimed a .357 Magnum revolver at Martin, whose car coasted slowly through the roadblock. Short's revolver discharged, wounding Martin in the face. Short told Zukowski, "It just went off." Zukowski called for an ambulance and asked that Lieutenant Spinks be notified. When Spinks arrived, Zukowski described the shooting and reported Short's comment. Spinks asked that Police Chief Maule be called to the scene. Zukowski reported the same facts to Maule. Maule later directed Zukowski to omit Short's statement from his report and not to indicate that the shooting was accidental.

At the time of the shooting, Richard Martin had a full mustache and beard, whereas the Holbrook robbery suspect was clean-shaven. The evidence at trial to this effect was overwhelming. Both Spinks and Maule saw Martin at the scene and later at the Winslow hospital. Martin's beard was not shaven until he was admitted to the Good Samaritan Hospital in Phoenix, where he was flown from Winslow.

A Navajo County grand jury investigated the Holbrook robbery and indicted Martin as the perpetrator; however, the state dismissed the charges when the robbery victim told the prosecutor that Martin was not the person who had robbed him. Spinks and Maule had been witnesses before the Navajo County grand jury.

In 1983 a state grand jury investigated charges that members of the Winslow Police Department, including Spinks and Maule, had attempted to avoid accountability for the accidental shooting of Martin by falsely portraying Martin as a robber fleeing Holbrook, hiding the fact that Martin's facial appearance was inconsistent with the description of the Holbrook robber, and hiding the fact that Winslow officers had permitted potential suspects to pass the Winslow roadblock shortly before Martin was shot. Spinks was sworn as a witness before the state grand jury. His testimony included the following:

Q. You saw Mr. Martin in the [Winslow] hospital?

A. Yes, sir.

Q. And, did Mr. Martin have any kind of beard at the time that you saw him in the hospital?

A. Not that I saw at all, no, sir.

Q. Well, did you have a clear view of Mr. Martin?

A. I seen the side of Mr. Martin's face. He had long sideburns down here.

Q. You say "here," and the court reporter can't record your gestures.

Are you pointing to the right side of your face?

A. Right about to the earlobe, is what I saw. He had sideburns down to his earlobe here.

Q. Are you saying that he had sideburns down just below his earlobe on his right ear?

A. Yes, sir.

Q. And, you could see the whole right side of his face?

A. I could see—he had right up to here (indicating).

Q. He had a rag up to the left side of his face?

A. It was either left or right, I don't remember. But, I know when he turned sideways and when he was talking to Barbara Jean Coulter, I seen the side of his face. And, he wasn't bearded then.

Q. Well, what side of his face did he have the rag up to?

A. I don't remember, sir.

Q. But you clearly saw one side of his face?

A. Yes, sir.

Q. He had sideburns down just below the earlobe?

A. That is what I remember, yes, sir.

Q. He had no beard?

A. Not that I could remember, no, sir.

Q. Well, you said, "Not that you can remember."

Are you saying that he may have had a beard, but you just didn't see it?

A. I couldn't see. If the hospital had shaved him then, I don't know. When I seen him, he did not have a beard, no.

Q. Are you one hundred percent certain of that?

A. Yes, sir.

Q. Did he have any kind of mustache?

A. I couldn't see.

Q. You could see half of his face; isn't that what you testified?

A. Yes, sir. I didn't see the area up in here. I don't remember him having a mustache, no, sir. But, I do know I seen bare skin in here.

Q. On the side of his face?

A. Yes, sir.

Q. Did you question Mr. Martin at the hospital?

A. No, sir.

Q. Did you attempt to question him at the hospital?

A. He refused to talk to us, yes, sir.

Q. Was he transported then away from the hospital to another hospital?

A. Yes, sir.

Q. Where was he taken?

A. Taken to Phoenix.

Maule was also called before the state grand jury and testified, like Spinks, that he saw Martin at the Winslow Hospital, that one side of Martin's face was visible, and that Martin had no beard.

The state grand jury ultimately returned an indictment charging Spinks and Maule with a number of criminal offenses. Significant to this appeal are the charges of perjury and false swearing against Spinks for the testimony quoted above.

### The Contested Evidence

An element of perjury is materiality. Material evidence is defined by A.R.S. § 13–2701(1) as "that which could have affected the course or outcome of any proceeding or transaction."

The prosecution had the burden of proving that Spinks testified falsely to the state grand jury in describing Martin as beardless and the additional burden of proving that the question of Martin's beard was material to the state grand jury's investigation. *Franzi v. Superior Court*, 139 Ariz. 556, 679 P.2d 1043 (1984). The state's theory of materiality was this: Martin had a full beard. If Spinks and Maule knew it shortly after the shooting, they should have excluded Martin as a valid suspect in the Holbrook robbery. Instead they proffered Martin as a robbery suspect, hiding their knowledge of his beard, to protect the Winslow Police Department from accountability for Martin's accidental shooting. Confirming that Martin had a beard, according to the state, was therefore a pertinent increment in the grand jury's exploration of Spinks's and Maule's conduct.

To prove materiality the prosecution placed in evidence a bound exhibit (Exhibit 87) containing excerpted transcripts of the testimony of twenty state grand jury witnesses, including Spinks and Maule. The trial court granted defense objections to specific portions of the exhibit, but overruled their objection that all but the Spinks and Maule transcripts should be excluded

as a violation of defendants' confrontation rights.[1] Exhibit 87, edited in accordance with the trial court's order, was placed before the jury. The transcribed testimony essentially concerned whether Martin had a beard, the appearance of the beard, and whether it distinguished Martin from the Holbrook robber.[2]

### Confrontation

The right of an accused to confront an adverse witness is guaranteed by the sixth and fourteenth amendments of the United States Constitution and by art. 2, § 24 of the Arizona Constitution. *State v. Edwards*, 136 Ariz. 177, 665 P.2d 59 (1983). The accused may thereby test the recollection of adverse witnesses and subject them to the factfinder's scrutiny of their credibility and demeanor. *State v. Pereda*, 111 Ariz. 344, 529 P.2d 695 (1974). The defendant claims that the admission of Exhibit 87 denied him the opportunity to confront two categories of witnesses: first, those grand jury witnesses whose testimony was transcribed and who did not appear at trial and, second, the grand jury members themselves.

This argument is met in part by the state's response that the transcripts were not offered for the truth of the testimony they contained, but only to prove that statements regarding Martin's beard were material to the grand jury. That Martin's beard was the subject of numerous questions to a variety of grand jury witnesses was a fact proven by the transcript, not a testimonial assertion reported in the transcript. Although most of the questions were posed by the prosecutor, not by grand jurors themselves, the fact that the grand jury devoted its attention so extensively to

such questions permitted the inference that the grand jury deemed the beard material.

Admission of the transcript, if for this limited purpose, was not hearsay. Rule 801(c), Arizona Rules of Evidence. The hearsay rules do not precisely delimit the scope of the confrontation clause. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *State v. Martin*, 139 Ariz. 466, 679 P.2d 489 (1984). They share, however, the functional purpose of promoting reliability of evidence at trial. *See, e.g., Kentucky v. Stincer*, —— U.S. ——, ——, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631, 643 (1987); *see generally* McCormick, *Evidence* § 252 (3rd Ed.1984); 5 Wigmore, *Evidence* § 1397 (Chadbourn rev. 1974). Division Two of this court has repeatedly held that the admission of out-of-court statements for the nonhearsay purpose of proving that certain words were spoken does not violate the right of confrontation. *State v. Hauss*, 142 Ariz. 159, 688 P.2d 1051 (App.1984); *State v. Silva*, 137 Ariz. 339, 670 P.2d 737 (App.1983); *State v. Nightwine*, 137 Ariz. 499, 671 P.2d 1289 (App.1983). The United States Supreme Court has recently held likewise. *Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985). We concur with these authorities and apply their holding to the present case.

The application of this rule, however, does not fully respond to the defendant's position on appeal. He argues:

> The only people who know whether the beard issue was material to the grand jury's deliberations are the grand jurors themselves. It is respectfully submitted that the only way to prove the materiality of the statements was to ask the grand jurors if the answer to the question regarding Martin's facial appear-

1. The issue on appeal is limited to the admissibility of the transcribed grand jury testimony of the eighteen non-party witnesses, not the grand jury testimony of Spinks and Maule. To avoid cumbersome repetition of this qualification, however, we will speak generally of the issue of "admissibility of Exhibit 87." Where we wish to include or refer to the Spinks or Maule transcripts we will do so explicitly.

2. Of the eighteen excerpted grand jury witnesses other than Spinks and Maule, twelve testified at

trial. Eight of the excerpted witnesses described Martin's beard; six of these testified at trial. The other ten excerpted witnesses, six of whom appeared at trial, testified on related points, i.e., that the Holbrook robber was clean-shaven, that he was so described in Holbrook police dispatches, that the question whether Martin had a beard was discussed with Spinks and Maule after the shooting when Martin was considered as a suspect.

ance, whether he was or was not bearded, would have made a difference to the grand jury's decisions.

The argument proceeds that the state's failure to call the grand jurors not only denied the defendant the opportunity to confront and cross-examine them, but also left the state with insufficient proof of materiality.

■ In response we first note that the defendant has waived any claim of insufficient evidence of materiality. Rule 20, Arizona Rules of Criminal Procedure, requires that a defendant move for a judgment of acquittal when there is no substantial evidence to warrant a conviction. Although co-defendant Maule's counsel filed a written motion for judgment of acquittal, that motion did not present the issue of the adequacy of Exhibit 87 to prove materiality. Defendant Spinks failed to have portions of the argument of Maule's Rule 20 motion transcribed, and there is nothing in the record before this court to indicate whether Spinks joined in Maule's Rule 20 motion or, if so, whether he then advanced his present argument that Exhibit 87 was inadequate to prove materiality. When an appellant fails to provide this court with the record necessary for its determination, we must presume that the record supports the decision of the trial court. *State v. Kerr*, 142 Ariz. 426, 690 P.2d 145 (App. 1984).

■ Even if Spinks had preserved the argument of insufficiency of evidence, however, we would reject it. The state made a prima facie case of materiality by producing a transcript showing the grand jury's extensive attention to questions of the existence and appearance of Martin's beard; the trial jury could reasonably have inferred therefrom that the grand jury believed the subject material to its inquiry. Having made that showing, the state had no obligation to supplement it by calling the grand jurors as witnesses at trial. Although the prosecution has the burden of producing evidence to prove guilt of the accused beyond a reasonable doubt, it does not have the burden to call witnesses, equally available to both sides, whose cross examination might be helpful to the accused. *U.S. v. Snow*, 521 F.2d 730 (9th Cir.1975).

## Limiting Instruction

The introduction of Exhibit 87 into evidence for the limited purpose of proving the materiality of Martin's beard did not violate defendant's confrontation rights. We consider, however, whether the trial court erred reversibly in failing to instruct the jury on the limited usage of that evidence. Although the appellant has not raised the absence of a limiting instruction as a basis for appeal, we address the issue in service to our obligation to search the record for fundamental error. *See State v. Brown*, 125 Ariz. 160, 162, 608 P.2d 299, (1980).

After defendant objected to the admission of Exhibit 87, the court heard argument in chambers. The prosecutor argued that Exhibit 87 was admissible to show materiality, but added, "There is no problem with a limiting instruction with respect to 87 and telling the jury it is just for the purposes of materiality." The court found the exhibit admissible for that limited purpose, but did not initially respond to the state's suggestion that a limiting instruction be given. When the defense later renewed its objection that admission of Exhibit 87 violated defendant's confrontation rights, the state renewed its suggestion:

> MR. CUDAHY (for the state): ... I think the issue has gotten a little obscured as to exactly what Exhibit 87 is. Exhibit 87, and this came up when the exhibit was first offered, ... relates to materiality before the grand jury, and Arizona has this requirement under [*Franzi v. Superior Court*] which says that the state has to put in evidence for the jury, and that's what 87 is, evidence of materiality of the statements.
>
> The statements of the witnesses other than the Rule 801 party statements [the grand jury testimony of Spinks and Maule] are not being offered for the truth of them.
>
> The state would have no objection to an instruction from the court that the

statements other than the Rule 801 party statements are to be used only for purposes of determining materiality of the statements posed by a person before the grand jury....

THE COURT: I can't instruct the jury on any issue in any respect, and the reason is that the record, contrary to the constitutional prohibition, can't comment on the facts, [sic] and that would be a comment on the facts of this matter, and it's clear in the [*Franzi*] case, and that's why [*Franzi*] suggested that the appropriate procedures to follow is [sic] do what we are doing now, put it in the records, and then push it to the jury without any comments before the jury about what has transpired in legal arguments or legal proceedings out of their presence....

MR. CUDAHY: Is it the court's position that it cannot instruct the jury that a particular exhibit cannot [sic] be used only for determining materiality?

THE COURT: I think it does more harm than good. And if I begin to go beyond that and explain then I am walking into a constitutional quagmire.

You see, you are in a circle. Do you see the circle? You can't go into the area without explaining. And if I explain why you are in the area, then I am over into constitutional prohibition.... That's what [*Franzi*] stated was improper.

■ The trial court incorrectly interpreted *Franzi* as precluding an instruction limiting application of Exhibit 87 to the issue of materiality. In *Franzi*, the supreme court set forth a two-part procedure to determine the materiality of an allegedly perjurious statement: first, the trial court must make a screening decision whether the statement was material as a matter of law; second, if the trial court finds the statement material, it must submit the issue of materiality to the independent determination of the jury. *Franzi*, 139 Ariz. at 562, 679 P.2d at 1049. The trial court is indeed prohibited from informing the jury of its threshold opinion of materiality. *Id.; see also* Ariz. Const. art. 6, § 27. This

prohibition against commenting on the evidence, however, does not prevent the trial court from instructing the jury on the limited usage of the evidence. Here, the court could and should have advised the jury that the statements in Exhibit 87 were not to be considered in determining the existence or appearance of Martin's beard, but only in determining whether the subject of Martin's beard was material to the state grand jury's inquiry.

■ Yet the only suggestion of a limiting instruction came from the state, at least insofar as is reflected by the limited record supplied this court. We find no indication that defense counsel either requested a limiting instruction or objected to the trial court's conclusion that it could not give one. Failure to give an unrequested instruction is generally not error. *State v. Ganster*, 102 Ariz. 490, 433 P.2d 620 (1967); *State v. Baker*, 126 Ariz. 531, 617 P.2d 39 (App.1980); Rule 21.3, Arizona Rules of Criminal Procedure. A claim of error in denial of a jury instruction is ordinarily waived on appeal if not expressed at trial. *State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976). The exception to this rule is the unrequested instruction vital to the defendant's rights. The trial court must give such an instruction even if the defendant fails to request it. *State v. Vild*, 155 Ariz. 374, 746 P.2d 1304 (Ariz.App.1987), *petition for cert. filed* CR–87–0221–PR (Ariz. Sup.Crt. July 15, 1987); *State v. Baker*, 126 Ariz. at 533, 617 P.2d at 41. Accordingly, we consider whether the trial court's failure to instruct the jury on the limited application of Exhibit 87 constituted fundamental error.

■ Whether failure to give a limiting instruction is fundamental error turns upon the facts of the case. *State v. Tamplin*, 146 Ariz. 377, 379, 706 P.2d 389, 391 (App. 1985). Upon the facts of this case, we find no fundamental error. To begin with, there is no indication in this record that the exhibit was offered to the jury in a way that violated defendant's confrontation rights. Before admission of the exhibit, the prosecutor told the court in chambers, "We don't intend to get up in closing argu-

ment and argue that [grand jury witnesses] said something, and that it is true of any substantive facts in this case." The court responded, "You are going to walk out of here for sure, if you do that. I'm telling you that would be a shade short of treason ... at this point." The prosecution limited its use of Exhibit 87 at trial to establishing materiality and, in fact, stressed in closing argument that this was the sole purpose of the exhibit. The prosecutor referred to Exhibit 87 as follows:

> Also, when you are trying to consider in your jury room whether it was a material and important. [sic] Obviously, it was important in this courtroom, you will see, when you review Exhibit number 87.... As you look at each and every passage that's located herein and identified as true and correct information by the certified court reporters and official court reporters of the State of Arizona, every essential detail about the beard, and you will see that's an important and material inquiry, and the false statements made about the beard before the state grand jury is [sic] perjurious.

The prosecutor returned to this theme in rebuttal: [3]

> There was a comment about Exhibit number 87. That's the materiality exhibit. The purpose of this exhibit, all the testimony of all these different witnesses before the state grand jury from March of 1983 through December of 1983, is to show that the beard was an important issue at the grand jury, materiality. That will be defined to you as something that could affect the course or outcome of the proceeding, and if anything could have affected the course or outcome of that proceeding [it] was the beard issue. *It was a constant issue, as you can see from the transcripts, and the testimony of the people in this Exhibit 87, other than Mr. Maule and Mr. Spinks, are (sic) offered just for the purposes of showing you the materiality of the beard issue at the grand jury.*

The state thus clearly articulated its limited purpose in introducing Exhibit 87 and attempted no improper usage of the testimony transcribed within it. While the state's attempt at presenting its own limiting instruction through closing argument was no substitute for a proper instruction by the court, it is a factor we consider in assessing the prejudice, if any, of the court's omission. Compare *Tennessee v. Street,* 471 U.S. at 416, 105 S.Ct. at 2083, 85 L.Ed.2d at 432 (the trial court's limiting instruction was bolstered by the efforts of the prosecution to underscore the limited usage of its evidence) with *People v. Odom,* 71 Cal.2d 709, 78 Cal.Rptr. 873, 456 P.2d 145 (1969) (the trial court's failure to give a limiting instruction was not relieved of error by the efforts of the *defense counsel* to underscore the limited usage of the *prosecution's* evidence).

In this case we find no prejudice, because, even if the jury ignored the state's limited usage of the evidence and considered Exhibit 87 as substantive evidence of the existence and appearance of Martin's beard, such expanded application of the evidence would have been harmless in effect. (For the application of the harmless error doctrine to claims of confrontation clause violations, *see Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).) First, we have compared the trial testimony and grand jury testimony of the twelve witnesses who appeared at both proceedings, and we find that none of them addressed matters in their grand jury testimony that they did not fully address and expose to cross-examination at trial. Second, we have reviewed the testimony of each of the six grand jury witnesses who did not appear at trial, and we find its substance merely cumulative of the testimony of numerous trial witnesses on all matters concerning the beard. Third, we reiterate that the state had proven that Martin was bearded by overwhelming evidence independent of Exhibit 87. Six of the grand jury witnesses testified at trial that Martin had a beard. Martin testified that he had a beard. Nurses, technicians, and doctors from both of the hospitals where Martin was treated testified

---

**3.** A transcript of the closing argument on behalf of Spinks has not been provided to this court.

that he had a beard until he was shaven at Good Samaritan Hospital in Phoenix. Finally, we are satisfied that the state's evidence was sufficient, unbolstered by improper usage of Exhibit 87, to prove beyond a reasonable doubt that at least an ample portion of Martin's beard was visible to Spinks at the Winslow Hospital. Spinks himself told the grand jury that one side of Martin's face was visible at the Winslow Hospital, and there were no restrictions on the prosecution's usage or the trial jury's consideration of the transcript of that testimony. In conclusion, we find no reasonable possibility that the challenged portions of Exhibit 87 contributed to the defendant's conviction, except insofar as they properly established the materiality to the grand jury of statements concerning Martin's beard. *See Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 710 (1967). The failure to give a limiting instruction was harmless beyond a reasonable doubt. *See State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973).

Defendant's conviction and sentence are affirmed.

GRANT, P.J., and CONTRERAS, J., concur.