Filed 7/28/16  P. v. Acosta CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C077608 |
| Plaintiff and Respondent, | (Super. Ct. No. SF121484A) |
| v. | |
| EBER ACOSTA, | |
| Defendant and Appellant. | |

A jury found defendant Eber Acosta guilty of carrying a loaded, stolen firearm (count 1), receiving stolen property (count 2), possession of a forged driver's license (count 3), and contempt of court by disobeying a court order (count 5).  The jury also found he committed count 3 while released from custody for another crime.  The jury did not return a verdict as to count four—unlawful use of a driver's license—and that count was dismissed.

On appeal, defendant contends counts 1 and 2 were not supported by sufficient evidence, and that his trial counsel, the prosecutor and the trial court committed various

1

errors.  We reject his insufficiency of the evidence claims and also conclude defendant failed to establish ineffective assistance of counsel or *Griffin* error.[1]  Defendant did demonstrate the trial court erred in refusing to rule on his motion for new trial, but this error was harmless.  Accordingly, we affirm the judgment.

## I.  BACKGROUND

At trial, City of Stockton Police Lieutenant Michael Reynosa testified that on the evening of September 5, 2012, a report came in of shots being fired in the area he was already working.  Two callers described a white SUV with tinted rear windows.  Lieutenant Reynosa found a shell casing in the road two or three blocks from the reported location of the shooting.  A few blocks later, he saw a white car with tinted rear windows pull into a driveway.  Defendant and his passenger got out of the car and walked into a nearby house.

As Lieutenant Reynosa walked up to the house, the passenger came out and said he lived a couple of houses away.  The lieutenant knocked on the door and a woman answered.  He asked her to have the driver come out and talk with him.  Defendant did so.  Defendant was sweating and looking around.  He appeared to be nervous, and Lieutenant Reynosa thought defendant was going to run.  At this point, the lieutenant did not see any other officers there to back him up yet.  Defendant looked at his passenger, who was watching the exchange from about 15 feet away.

Lieutenant Reynosa testified that he asked defendant if he had a driver's license, and defendant said no.  Next, the lieutenant explained, "I asked [defendant] if there was anything illegal in the car, if there was a gun in the car.  He initially said no.  [¶]  But when he did, he put his head down and looked up at me and so I told him, I said, 'Hey, look, I've got four kids.  My oldest just graduated college, so I get it.'  I told him that,

---

[1]  *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).

'I've seen it when—I've been lied to. I've seen it before. I kind of know what it looks like and the look you gave me is just like my kids.' [¶] And [defendant] said, 'Okay. I have a gun in the car. It's under the driver's seat.' " At this point, Lieutenant Reynosa "secured" defendant and his passenger.

There was, in fact, a loaded, 9-millimeter gun under the driver's seat. There were 15 live rounds in the magazine of the gun, which was inserted into the magazine well of the gun, but there was no bullet in the chamber. There was also a pill bottle in the center console that contained multiple rounds of 9-millimeter ammunition.

Lieutenant Reynosa advised defendant of his *Miranda* rights.[2] After defendant indicated he understood these rights, he said he bought the gun recently from an unknown male on the streets for $400. When he was asked if he thought a record search would show the gun was stolen, defendant said most guns for sale on the streets are stolen, so he believed his gun was probably stolen as well.[3]

Defendant was booked into jail and released on his own recognizance subject to a search condition. A subsequent search of defendant's house yielded a driver's license and work identification card in the name of Raul Corona with defendant's picture on them. The driver's license number belonged to a woman from Escondido. Defendant admitted the driver's license was altered and said he had it so that he could work under the false name. Live ammunition was found next to the identification.

## II. DISCUSSION

### A. *Ineffective Assistance of Counsel*

Defendant contends his trial counsel rendered ineffective assistance by not developing evidence or argument that he was unlawfully detained. He posits that if trial

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[3] The gun's owner testified that the gun was stolen in 2000.

counsel had done so, it is reasonably probable the trial court would have suppressed the defendant's statement that there was a gun in the car and all the evidence that flowed therefrom. Defendant also argues his counsel erred by conceding that a similar challenge under *Miranda* could not be raised at the Penal Code section 1538.5[4] suppression hearing, and for generally failing to challenge the admission of this evidence under *Miranda*.

"To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Citations.] If a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient. [Citation.] If the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 366-367.)

We cannot conclude defense counsel was ineffective on this record.

*1. Motion to Suppress*

Before trial, defense counsel filed a motion to suppress pursuant to section 1538.5. In it, he argued Lieutenant Reynosa lacked reasonable suspicion to detain defendant. Defense counsel also asserted defendant was in custody as soon as he stepped outside of the home because he was greeted by a "barrage of accusations and profanities" and he

---

[4] Undesignated statutory references are to the Penal Code.

4

lacked the freedom to retreat because the door was closed behind him and there were "police officers all around him." Thus, defendant's rights under *Miranda* were violated because he was not immediately advised of them. Defense counsel subsequently filed a new motion dealing only with search and seizure issues after he agreed with the prosecution that the *Miranda* issues should be excised.

At the hearing on the motion to suppress, Lieutenant Reynosa gave additional detail regarding his encounter with defendant on September 5, 2012. Before Lieutenant Reynosa knocked on the door, the passenger immediately walked outside and started talking to the lieutenant. Then, a woman came to the door. Lieutenant Reynosa asked her if she could have the driver come outside to talk to him. Defendant came outside, and the security screen closed behind him. Lieutenant Reynosa did not draw his gun or use any show of force with the woman or defendant. The lieutenant recalled that another officer was with him when he was speaking to defendant and three other officers eventually arrived, but he could not remember when. He asked defendant if he had anything illegal in his car, and defendant responded that he had a gun under the driver's seat. At that point, defendant was handcuffed and another officer searched the car. After the gun was found, Lieutenant Reynosa advised defendant of his *Miranda* rights.

At the conclusion of Lieutenant Reynosa's testimony, defense counsel argued the lieutenant lacked reasonable suspicion to detain defendant. The prosecution countered in part that the exchange was consensual and therefore reasonable suspicion was not required. The trial court agreed with the prosecution and denied the motion to suppress.

*2. Detention*

Defendant contends his trial counsel was ineffective because he failed to develop evidence or argument that he was unlawfully detained. Specifically, he faults defense counsel for not putting forth "evidence or argument as to the coercive nature of the confrontation" to contradict Lieutenant Reynosa's testimony. As a threshold matter, we do not know if any such evidence existed. Defendant refers primarily to factual

5

assertions about the encounter made in his trial counsel's original motion.[5]  The motion

differs from Lieutenant Reynosa's testimony in a few key respects.  The motion

represents that the lieutenant used interrogation techniques by accusing defendant of

committing various crimes, insulting defendant by telling him he looked like a scared

child, and exclaiming, " 'Don't fucking lie to us!' "  But these assertions are unsupported

by counsel's citations to the preliminary hearing transcript.  At that hearing, Lieutenant

Reynosa testified defendant initially denied having anything illegal in the car, and "when

[defendant] said no, he put his head down real quick, just kind of looked up to me.  [¶]  I

said 'Hey, man, I've got kids.  I know when I'm being lied to.'  It's just like that.  He said

he had a gun in the car."  Therefore, the source of defense counsel's factual

representations (if any) is unknown.

　　　If evidence to support these assertions had been introduced, and the trial court had

credited it instead of Lieutenant Reynosa's testimony, the evidence would have been

more suggestive of a detention.  (See *People v. Linn* (2015) 241 Cal.App.4th 46, 58

[noting that " 'the threatening presence of several officers, . . . the use of language or tone

of voice indicating that compliance with the officer's request might be compelled,' " and

whether officer indicated defendant was a suspect are all relevant to the totality of the

circumstances in determining if a detention occurred].)  However, we do not know why

any such evidence was not introduced.  The record includes neither an explanation nor an

indication that defense counsel was asked for an explanation.  This is not a case where we

can conceive of no satisfactory explanation for counsel's omissions.  For example, since

there is no actual evidence in the record to support this alternate version of events, it is

---

[5]  The record evidence defendant cites is not sufficiently suggestive of a detention—the presence of multiple officers, that defendant stepped outside of the house at the lieutenant's request, and that the security screen closed behind him.  Indeed, we note defendant does not claim the trial court erred in finding the encounter consensual based on the current record.

possible the original motion overstated defendant's case and there was no witness willing to testify to those facts. Further, the most obvious source of information for defense counsel to refute Lieutenant Reynosa's version of the encounter was defendant himself. It could be that it had yet to be determined whether defendant would testify at trial, and counsel felt that the risks of having defendant testify at the suppression hearing did not outweigh the benefits where the officer had already testified the encounter was consensual. When a defendant testifies at a suppression hearing, the use of that testimony is precluded during the prosecution's case-in-chief, but may become admissible as impeachment if defendant chooses to testify. (*People v. Spence* (2012) 212 Cal.App.4th 478, 496.) Because there could be a satisfactory explanation for trial counsel's decision not to develop evidence and argument that there was a detention, we cannot conclude there was ineffective assistance of counsel.

### 3. *Miranda*

Defendant similarly asserts his trial counsel was ineffective for failing to seek exclusion of the statement that he had a gun in his car and the evidence obtained as a result of that statement because of an alleged *Miranda* violation. To the extent he faults counsel for withdrawing the *Miranda* claim from the section 1538.5 motion, defendant is incorrect. Section 1538.5 may not be used to suppress a statement on the grounds that it was the product of a Fifth or Sixth Amendment violation. (*People v. Whitfield* (1996) 46 Cal.App.4th 947, 958; see also § 1538.5, subd. (a)(1) ["A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure"].)

Additionally, for the same reasons we could not conclude on this record that trial counsel was ineffective for failing to develop evidence and argument that there was a detention, we cannot conclude trial counsel was ineffective for failing to raise the *Miranda* issue. The record establishes that defendant's encounter with Lieutenant Reynosa did not begin as a custodial interrogation such that *Miranda* warnings should

7

have been administered immediately.  (See *Miranda, supra,* 384 U.S. at p. 444 ["By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way"].)  Defendant's theory that his trial counsel could have developed evidence that defendant was in custody at the time the encounter commenced is even weaker than his theory with respect to his alleged detention.  (See *California v. Beheler* (1983) 463 U.S. 1121, 1125 (*per curiam*) ["the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest"]; *People v. Clair* (1992) 2 Cal.4th 629, 679 [explaining that custody generally does not include a temporary detention for investigation].)  But, again, to the extent there may have been any evidence to support this theory, there could be a satisfactory explanation for trial counsel's decision not to introduce it, and so we cannot conclude there was ineffective assistance of counsel.

B.	*Section 25850*

Defendant makes two arguments that turn on the same issue—whether a conviction under section 25850 requires proof the defendant knew the firearm was loaded:  (1) there was insufficient evidence of defendant's knowledge the gun was loaded and (2) the trial court erred by not instructing the jury that it must find this fact to be true. Because we disagree with defendant on the threshold issue, we reject both claims.

Section 25850, subdivision (a) provides that "[a] person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory."  Section 25850, subdivision (c)(2) states that a violation is punishable as a felony where "the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen."  Nowhere does section 25850 state a requirement that the defendant knew the gun was loaded, and courts appear to have uniformly held there is no such requirement.

8

(E.g., *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1514, fn. 3; *People v. Dillard* (1984) 154 Cal.App.3d 261, 263.)  One such case reached this conclusion in part because it held that section 25850 is "a quintessential public welfare statute." (*Id.* at p. 266.) Defendant asks us to revisit this question in light of recent California Supreme Court cases, including *In re Jorge M*. (2000) 23 Cal.4th 866.  That case found a seven-factor analysis useful for deciding whether a statute prohibiting the possession of an assault weapon should be construed as a public welfare offense (*id.* at p. 873) before concluding it was not, and therefore the statute required the prosecution to "bear the burden of proving the defendant *knew or reasonably should have known* the firearm possessed the characteristics bringing it within the [Assault Weapons Control Act]." (*Id.* at p. 887.) We find it unnecessary to expound upon each of these factors here because there is a crucial distinction between whether a gun satisfies the statutory definition of an assault weapon and whether or not it is loaded.  In this respect, we agree with the court's analysis and holding in *People v. Dillard* that section 25850 is "a quintessential public welfare statute" and the prosecution is not required to prove that the defendant had knowledge that the gun was loaded.  (*People v. Dillard, supra,* at p. 266.)  Consequently, we reject defendant's claims of insufficient evidence and instructional error based on this nonexistent requirement.

C.     *Receipt of Stolen Property*

Section 496, subdivision (a) punishes the receipt of stolen property where the defendant knew the property was stolen.  (See *People v. Roder* (1983) 33 Cal.3d 491, 499 ["[U]nder California law one of the elements of the offense of receiving stolen property is that the defendant must know that the property which he receives is stolen"].)  The parties agree the gun was stolen, but defendant argues there was insufficient evidence that he was aware of that fact.  Alternatively, he contends this conviction should be set aside because the prosecution did not prove the corpus delicti of the crime without his extrajudicial statements.

9

*1. Substantial Evidence*

We "review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  This is the same in cases in which the People rely primarily on circumstantial evidence.  (*People v. Bean* (1988) 46 Cal.3d 919, 932.)  " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.)

Lieutenant Reynosa testified that defendant told him he had purchased the gun recently from an unknown male on the streets for $400.  Defendant also said most guns for sale on the street are stolen, so he believed his was stolen as well.  These facts alone were sufficient evidence that defendant knew the gun was stolen.  (See *In re Stanley B.* (1971) 17 Cal.App.3d 530, 537, disapproved on another ground in *In re Robert G.* (1982) 31 Cal.3d 437, 445 ["Purchase of property from a stranger on the street justifies an inference that the property was received with knowledge that it had been stolen"].)  Accordingly, substantial evidence supports defendant's conviction for receipt of stolen property.

*2. Corpus Delicti*

Assuming defendant's corpus delicti claim is cognizable on appeal,[6] we nonetheless find it to be without merit.  "In every criminal trial, the prosecution must

---

[6]  (See *People v. Alvarez* (2002) 27 Cal.4th 1161, 1172, fn. 8 ["No decision of this court, including [*People v.*] *Wright* [(1990) 52 Cal.3d 367], has suggested that an evidentiary objection at trial is a prerequisite to raising *instructional* and *sufficiency* claims on appeal. However, post-*Wright* Court of Appeal decisions have split on whether, by virtue of *Wright*'s reasoning, the defendant must either give the prosecution trial notice of his

10

prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause.  In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant." (*People v. Alvarez, supra,* 27 Cal.4th at pp. 1168-1169.)  "The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*Id.* at p. 1171.)  Once this independent proof is submitted, the defendant's extrajudicial statements—in this case, that he bought the gun on the streets and thought it was probably stolen—may be considered to strengthen the case. (*Ibid.*)

To establish the corpus delicti of receiving stolen property, the prosecution must establish a "prima facie showing that the [property was] received with knowledge that [it was] stolen." (*People v. Barnes* (1962) 210 Cal.App.2d 740, 744.)  Defendant argues there was no evidence—independent of his extrajudicial statements—to support an inference that he knew the gun was stolen.  He is incorrect.  "Possession of stolen property, accompanied by suspicious circumstances, will justify an inference that the property was received with knowledge that it had been stolen." (*Id.* at p. 745.)  Here, the gun's owner testified regarding its theft and, significant to our analysis, said he wanted the 15-round magazine back because it was *no longer legal to purchase it.* (See §§ 16740, 32310 [prohibiting sale and purchase of large-capacity magazine].)  Thus, even without defendant's testimony, the evidence suggested he purchased the gun illegally. This was sufficient for a prima facie showing that defendant was aware the gun was stolen.

---

insistence on independent proof or forfeit the benefit of the independent-proof rule entirely"].)

*D.    Motion for New Trial*

*1.  Trial Court's Ruling*

Prior to the pronouncement of judgment and sentencing, defendant's trial counsel stated he would be making an oral notice of motion for a new trial on counts 2, 3 and 5 based on insufficiency of the evidence.  He also indicated he had prepared a written brief in support of the motion.  Then, the court and defense counsel had the following exchange:

"THE COURT:  [Defense counsel], this [is] a completely untimely motion for a new trial.  So I'm not going to allow you to make an oral motion for new trial.

"[DEFENSE COUNSEL]:  Your Honor, as I understand, it's before—my read of [section] 1181[, subdivision] 6, it's before pronouncement of judgment.

"THE COURT:  Without any—without you filing anything or points and authorities then it's not.

"[DEFENSE COUNSEL]:  Understood.  Thank you."

*2. No Actual Prejudice*

Defendant contends the trial court erred by refusing to entertain his motion for a new trial.  He is correct.  (See *People v. Braxton* (2004) 34 Cal.4th 798, 807, fn. 2.)  The question then becomes whether "defendant suffered actual prejudice as a result.  This will occur when, for example, the reviewing court properly determines from the record that the defendant's new trial motion was meritorious as a matter of law, or the record shows that the trial court would have granted the new trial motion and the reviewing court properly determines that the ruling would not have been an abuse of discretion." (*Id*. at p. 817.)  Again, defendant asserts there was insufficient evidence, independent of his extrajudicial statement, that he knew the firearm was stolen, and the People counter that there was substantial evidence.  We conclude there was no actual prejudice because, as set forth above, there is no reasonable probability the trial court would have granted a new trial on this basis.

*E.    Alleged* Griffin *Error*

Defendant also argues the prosecutor committed *Griffin* error during closing argument when he discussed defendant's statements to Lieutenant Reynosa. The prosecutor said, "Was there one witness, even one that took that stand for you folks to contradict what [Lieutenant] Reynosa said, about what the defendant said? Not one. Not one shred of evidence." Further, defendant posits that if this claim was forfeited by his trial counsel's failure to object, then defendant's trial counsel rendered ineffective assistance.

Neither contention is fruitful because there was no *Griffin* error. "The Fifth Amendment prohibits a prosecutor from commenting, directly or indirectly, on a defendant's decision not to testify on his own behalf." (*People v. Taylor* (2010) 48 Cal.4th 574, 632.) However, "[t]he Fifth Amendment does not prohibit the prosecution from commenting on the state of the evidence presented at trial, or on the defense's failure to introduce material evidence or to call witnesses other than the defendant." (*Id.* at p. 633.) Defendant's argument fails because he was not the only witness who could refute Lieutenant Reynosa's testimony. The evidence at trial established that at least the passenger watched the exchange between Lieutenant Reynosa and defendant. Thus, the prosecutor's comment was proper. (See *ibid.* [asking, " 'Who took this stand and gave you a reasonable explanation [as to defendant's presence in the victim's home]?' " was not *Griffin* error where other witnesses were possible].) Defendant's claim of *Griffin* error fails.

*F.    Cumulative Effect of Counsel's Alleged Errors*

Finally, we reject defendant's contention that the cumulative effect of his trial counsel's alleged errors requires reversal. Because we have found no error, there is no prejudice to cumulate.

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

BLEASE, Acting P. J.

/S/

BUTZ, J.