Filed 3/9/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTOINE LAMAR<br>WASHINGTON,<br><br>    Defendant and Appellant. | B296437<br>(Los Angeles County<br>Super. Ct. No.  MA073277) |

APPEAL from a judgment of the Superior Court of Los
Angeles County, Daviann L. Mitchell, Judge.  Affirmed in
part, vacated in part, and remanded with directions.

The Law Offices of Michelle T. LiVecchi-Raufi and
Michelle T. LiVecchi-Raufi, under appointment by the Court
of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————————

**INTRODUCTION**

Los Angeles County Sheriff's deputies served a search warrant on a home in Lancaster.  When they approached the home's garage, a deputy saw appellant Antoine Lamar Washington discard a firearm.  Inside the garage, deputies found a sophisticated drug-sale operation.  Following trial, a jury convicted appellant of possession of three controlled substances while armed with a firearm, possession of the three controlled substances for sale, possession of a firearm as a felon, and possession of ammunition as a felon.  The trial court sentenced appellant to a total of five years and eight months in state prison.  The sentence included a separate term -- whether consecutive or concurrent -- for each of appellant's offenses, except his possession of ammunition, for which the sentence was stayed under Penal Code section 654 (Section 654).  Appellant was further ordered to pay a restitution fine and certain assessments.

Appellant now challenges his conviction and sentence. He asserts:  (1) the evidence was insufficient to prove he had knowledge of the narcotics found in the garage; (2) the trial

2

court abused its discretion in admitting evidence of his prior conviction for possession for sale of a controlled substance; (3) the court improperly punished him multiple times for each of his criminal acts (the possession of each controlled substance and the possession of a firearm), in contravention of Section 654; and (4) the trial court violated his constitutional rights by imposing the fines and assessments without first determining his ability to pay. Appellant further asks that we independently review sealed portions of the search warrant affidavit to determine if the trial court erred in denying his motions to unseal the sealed portions, and to traverse and quash the warrant.

We agree with appellant that his sentence violates Section 654's proscription against multiple punishments for a single act. Under *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*) and its progeny, appellant's single possession of each item of contraband (methamphetamine, cocaine, cocaine base, and the firearm) constituted a single act, subject to only one punishment. Appellant's unstayed sentences for possessing controlled substances while armed, therefore, imposed additional punishment for the same acts punished by his sentences for possession of the substances for sale and the possession of a firearm by a felon. Accordingly, appellant's sentence was unauthorized. We therefore vacate the sentence and remand for resentencing. Finding no other error, we otherwise affirm.

# BACKGROUND

A. *The Information*

In May 2018, the Los Angeles County District Attorney charged appellant with: unlawful possession of three controlled substances (methamphetamine, cocaine, and cocaine base) while armed with three firearms (a Springfield semi-automatic handgun, a Smith & Wesson semi-automatic handgun, and a Ruger revolver) (Health & Saf. Code, § 11370.1, subd. (a); Counts 1, 2, 4, 5, 6, 8, 9, 10, & 12);[1] possession for sale of the same three substances (Health & Saf. Code, §§ 11351, 11351.5, & 11378; Counts 17, 18, & 20); possession of the same three firearms by a felon (Pen. Code, § 29800, subd. (a)(1); Counts 31, 32, & 33); and possession of ammunition by a felon (Pen. Code, § 30305, subd. (a)(1); Count 36).[2] The information alleged that appellant committed each of these offenses "[o]n or about February 16, 2018." Appellant pleaded not guilty, and the case proceeded to trial in January 2019.

B. *The Prosecution's Evidence at Trial*

On February 16, 2018, at about 1:30 a.m., Los Angeles County Sheriff's deputies served a search warrant on a house on Corkwood Avenue in Lancaster. Detective

---

[1]	Each of these nine counts described one of the three substances and one of the three firearms.

[2]	Other counts included in the information are not pertinent to this appeal.

4

Jonathan Delling led two teams of deputies to execute the search.  Before executing the search, the deputies received information that a man named Sam might be a drug seller at the location.  As the deputies approached the residence, Detective Delling saw a man sweeping in the street.  When the man saw the deputies, he walked toward the residence and started shouting.  Recognizing that the man was serving as a lookout, Detective Delling instructed the teams to approach the residence quickly.[3]

As deputies approached the garage attached to the house, Detective Delling saw that the garage door was partially open.  Although the garage was very dimly lit, Detective Delling used a light mounted on his firearm to illuminate it and was able to see multiple people inside.  Two people were sitting on a couch at the back of the garage, and one person, later identified as appellant, was standing between a dresser and the couch.  Detective Delling then saw appellant move across the garage, pull a small revolver out of the back pocket of his pants, and discard it.

All the occupants of the garage and home were then ordered out.  Seven people were found in the house.  One man, Samuel Farrell, was found in possession of cocaine base.  One woman, Taraya Young, resided at the house, and her parents were also present when the deputies arrived.

---

[3]     In the meantime, the lookout ran away.  An unidentified woman exited the house as the deputies approached, but was not pursued, as she posed no threat.

5

Young's sister and two other women were found in the garage.

A search of appellant found $451 in his pocket, in various denominations in no discernible order.[4]  Deputies also recovered a loaded Ruger revolver from the area where appellant was standing when Detective Delling saw him discard a revolver.  At trial, Detective Delling was "[a] hundred percent" certain the recovered Ruger was the gun he had seen appellant discard.

Inside the garage, deputies found a sophisticated drug-sale operation.  At trial, the court admitted the following not-to-scale diagram of the garage:



The dresser faced inward and was placed next to a headboard, creating a partially enclosed space.  Detective

---

[4]    Appellant possessed twenty-six $1 bills, five $5 bills, four $10 bills, thirteen $20 bills, and one $100 bill.

Delling described this area at trial as similar to "the checkout counter at a convenience store." When Detective Delling first saw appellant in the garage, appellant was standing behind the far-right corner of the dresser, marked on the diagram with an "X" near the dresser's top-right corner.

On top of the dresser were over $400 in cash, a container of marijuana, unused baggies, digital scales, and a container marked "TIPS," containing $36. Inside the dresser's drawers, deputies found more money, two loaded firearms (Smith & Wesson and Springfield handguns), and large amounts of methamphetamine and cocaine base.[5] Also found in the drawers was a notebook with pay-and-owe sheets. Testifying as an expert on drug-sale practices, Detective Delling explained a pay-and-owe sheet is how drug dealers keep track of payments for drug transactions. On the table within the counter area, deputies found two-way radios, radio scanners, and a video surveillance monitoring system that allowed those in the counter area to view anyone approaching the premises.

Along the east wall of the garage, among some "clutter" by the refrigerator and the headboard, deputies found more money and a baggie containing over 30 grams of cocaine. On top of a microwave (marked "M" in the diagram), deputies found a baggie containing over 22 grams of cocaine base, placed behind a lampshade and an unidentified object. At

---

[5] All of the drawers were either closed or slightly open.

trial, the parties stipulated that appellant was convicted of possession of cocaine base for sale in 2004.[6]

Based on a hypothetical mirroring of the facts of the case, Detective Delling opined at trial that the contraband found in the garage was possessed for sale. Detective Delling further opined that appellant possessed the drugs in the garage, based in part on appellant's possession of the revolver and the money. He explained that drug dealers in similar settings generally do not allow drug buyers to be armed. According to Detective Delling, it would not be "reasonable" for someone uninvolved in the operation to be armed and standing behind the "counter" containing the drugs and money, where he had seen appellant standing. He additionally opined that possessing $451 in various denominations in no discernible order indicated drug sales, suggesting that the person was collecting the money over time, as he was making sales.

At the conclusion of the People's case, appellant's counsel moved for a judgment of acquittal, arguing there was insufficient evidence to establish that appellant possessed or knew about the drugs or guns in the garage. The trial court denied the motion. The defense presented no testimony.

---

[6]    The trial court instructed the jury that it was to consider appellant's prior conviction only in deciding whether he knew one of the substances in the garage was cocaine base, whether he had the intent to sell a controlled substance, and whether his actions were the result of mistake or accident.

C. *Closing Arguments*

In their closing argument, the People argued primarily that the circumstances surrounding appellant's presence at the garage showed he was involved in the drug-sale operation. They emphasized the obvious nature of the operation, including the drugs and paraphernalia found throughout the garage. They also highlighted appellant's initial location behind the counter, the money in his pocket, his being armed, and Detective Delling's testimony that these circumstances indicated appellant was involved in the operation. Regarding the charges of possession of firearms by a felon, the People stated, "[I]f you believe the deputy that he saw a gun coming out of [appellant's] pocket, [he's] guilty [of] felon with a firearm . . . [. E]ven if you don't believe the deputy . . . but you still believe that [appellant] knew about the guns, then he's still guilty of felon with a firearm."

Appellant's counsel argued the evidence failed to show that appellant knew about any of the hard drugs or guns in the garage. She noted most of the drugs and guns were in the dresser drawers, and contended the drugs outside the drawers were not within appellant's sight, especially given the poor lighting conditions before the deputies arrived. Counsel claimed that because of the poor lighting in the garage, Detective Delling's observations through the partially open garage door were unreliable. She emphasized there was no evidence appellant had ever been at the location before and no evidence disclosing when he had

9

arrived there.  She suggested appellant might have been at the location "to see a girl."

### D. *The Jury's Verdict*

Following trial, the jury found appellant guilty as charged of: unlawful possession of methamphetamine, cocaine, and cocaine base while armed with the Ruger revolver (Counts 9, 10, & 12), possession of the same substances for sale (Counts 17, 18, & 20), possession of the Ruger revolver by a felon (Count 31), and possession of ammunition by a felon (Count 36).  The jury found appellant not guilty of all charges relating to his alleged possession of the Springfield and Smith & Wesson handguns found in the dresser drawers (Counts 1, 2, 4-6, 8, 32, & 33).

### E. *The Trial Court's Sentence*

The trial court sentenced appellant to a total of five years and eight months in state prison, consisting of the upper term of four years on Count 9 (unlawful possession of methamphetamine while armed), a one-year consecutive term on Count 17 (possession of cocaine base for sale), and an eight-month consecutive term on Count 31 (possession of a firearm by a felon).  The court imposed concurrent terms on Counts 10, 12, 18, and 20, and stayed the sentence for Count 36 under Section 654.  It further ordered appellant to pay a $1,500 restitution fine and $560 in statutory assessments.

In imposing a consecutive term on Count 31, the court found that appellant had been carrying the firearm independent of the drug sales. Noting that appellant had carried the Ruger revolver on his person while two other firearms were in the dresser drawers, the court inferred appellant had arrived at the location with the revolver. Appellant timely appealed.

## DISCUSSION

### A. *The Admission of Appellant's Prior Conviction*

#### 1. *Background*

Before trial, the People notified the court of their intent to introduce evidence of appellant's 2004 conviction for possession of cocaine base for sale to prove appellant's "intent" and "lack of mistake." Appellant objected that admitting the conviction would be unduly prejudicial. After hearing argument, the trial court found the prior conviction was relevant to appellant's "knowledge, intent, and lack of mistake," and that its probative value outweighed its prejudicial effect. However, the court ruled that only the fact of appellant's conviction would be admitted. At trial, appellant's counsel stipulated to appellant's prior conviction.

The court instructed the jury it could consider appellant's 2004 conviction only in deciding whether he knew one of the substances in the garage was cocaine base, whether he had the intent to sell a controlled substance, and whether his actions were the result of mistake or accident. It emphasized the jury was not to consider this evidence for

11

any other purpose and was not to infer from it that appellant had a bad character or criminal disposition. Finally, the court advised the jury that regardless of appellant's 2004 conviction, the People were required to prove each element of the charged offenses beyond a reasonable doubt.

In closing argument, the People occasionally referenced appellant's prior conviction as showing that he "would know what drugs are" and that the substances in the garage were controlled substances. The People also briefly suggested that given the garage was essentially a drug "store," appellant's prior conviction meant he would have known the drugs were in the dresser drawers. In appellant's closing argument, his counsel stated that his prior conviction was about 15 years earlier and that the jury could not convict based on "the fact that we've admitted that he has a past, and that it is in the same kind of category of crimes." She explained that the jury could consider appellant's prior conviction "to see if you think that it shows that he knows what was going on more than maybe you or I would," but emphasized that the conviction "doesn't mean that he's just automatically guilty of all the charges."

2. *Analysis*

Appellant contends the trial court prejudicially erred by admitting evidence of his prior conviction for possession for sale of cocaine base. He argues this evidence should have been excluded under either Evidence Code section 1101 or Evidence Code section 352. Appellant further contends the

12

erroneous admission of the evidence violated his federal constitutional right to due process.

We review state law challenges to a trial court's evidentiary rulings for abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) "Specifically, we will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Ibid.*) A miscarriage of justice results only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

Evidence Code section 1101, subdivision (a), "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).) Among other matters, evidence of prior bad acts may be used to establish motive, intent, knowledge, identity, lack of mistake or accident, and the existence of a common design or plan. (Evid. Code, § 1101, subd. (b).) To be admissible, the evidence of the prior misconduct must be

13

probative of a material fact.  (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 754 (*Ghebretensae*).)

We conclude the trial court did not abuse its discretion in admitting evidence of appellant's prior conviction for possession for sale of cocaine base.  At the very least, the evidence was relevant to show that if appellant was aware of the substances in the garage, he knew that one of them was cocaine base.  "To obtain a conviction for possession of a controlled substance for sale, the prosecution must prove that the defendant had knowledge of both the presence of the contraband and its illegal character."  (*Ghebretensae, supra,* 222 Cal.App.4th at 754 citing *People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746.)  "[I]n narcotics prosecutions, evidence of prior drug convictions is relevant to prove knowledge of the narcotic nature of the substance. [Citation.]  On this theory, the only necessary similarity is that the controlled substance be the same."  (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 241.)  Accordingly, appellant's prior conviction for possession for sale of cocaine base was relevant to prove his ability to recognize cocaine base in the garage.

Appellant contends the prior conviction was nevertheless inadmissible to prove his knowledge of the narcotic nature of the substances in the garage because:  (1) his sole defense at trial was that he had no knowledge of the *presence* of the substances, making proof of his familiarity with cocaine base immaterial; and (2) his prior conviction was too remote to be probative.  We disagree.

14

Regardless of appellant's defense theory at trial, by pleading not guilty, he placed all elements of the crimes with which he was charged in dispute. (*People v. Lindberg* (2008) 45 Cal.4th 1, 23.) Appellant did not stipulate that he was intimately familiar with cocaine base. Thus, his knowledge of the substance was a material fact. That appellant's prior conviction was somewhat remote did not degrade its probative nature: a factfinder could reasonably infer that a person who possessed a substance for sale would be able to recognize the same substance over a dozen years later. The evidence of appellant's prior conviction was therefore not inadmissible under Evidence Code section 1101.

Nor did Evidence Code section 352 compel exclusion of the evidence. Under that provision, trial courts have discretion to exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will, among other things, create substantial danger of undue prejudice. (Evid. Code, § 352.) "Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt." (*People v. Crew* (2003) 31 Cal.4th 822, 842.)

The evidence of appellant's prior conviction was not particularly inflammatory. The jury heard nothing about the circumstances of the prior offense, and the mere fact of a decade-and-a-half-old conviction for possession of drugs for sale is hardly incendiary when compared to appellant's

15

charged offenses, predicated on a sophisticated drug-sale operation involving multiple drugs alongside loaded firearms.  (See *Ewoldt*, *supra*, 7 Cal.4th at 405 [prior bad act's prejudicial effect is "decreased" if it is "no more inflammatory than the testimony concerning the charged offenses"].)  Additionally, because appellant's prior offense resulted in a conviction, there was no risk that the jury would be inclined to convict him of his current charges to punish him for his prior offense.[7]  (See *People v. Tran* (2011) 51 Cal.4th 1040, 1050 [no undue prejudice, in part because defendant stood convicted of prior offense, leaving "no risk the jury might convict defendant to prevent him from escaping punishment for the [prior offense]"].)

Moreover, even had we found admission of appellant's prior conviction erroneous, we would deem any error harmless.  As noted, the mere existence of appellant's 15-year-old conviction for possession of drugs for sale was unlikely to inflame the jury against him.  Indeed, that the jury acquitted appellant of all charges involving the firearms in the dresser drawers suggested that far from being inflamed by evidence of his prior conviction, the jury carefully considered the evidence and charges as to each

---

[7]    Appellant asserts in conclusory fashion that the trial court's admission of his prior conviction violated his federal constitutional right to due process because the conviction's probative value was outweighed by its prejudicial effect.  Given our conclusion that the evidence was not unduly prejudicial, its admission did not violate appellant's right to due process.

16

count. (See *People v. Chatman* (2006) 38 Cal.4th 344, 370 [jury's partial acquittal of defendant showed it had "'considered the evidence dispassionately in reaching its verdict'"].) The People made only a few brief references to the prior conviction in closing argument, primarily to suggest that if appellant knew about the substances in the garage, he also knew they were controlled substances (a matter appellant does not dispute on appeal). While the prosecutor made a passing reference to appellant's prior conviction as showing he would know the drugs would be in the dresser drawers given the location's store-like setup, the bulk of the People's argument focused on the circumstances surrounding appellant's presence at the garage: the obvious drug-sale operation, the drugs and paraphernalia outside the dresser drawers, appellant's location in the garage, the cash he possessed, and his being armed where mere buyers would not be allowed to be armed. Appellant's prior conviction was thus a very small part of the People's case and was unlikely to have swayed the jury. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 119 [any error was harmless where challenged evidence had "relatively minor significance in the prosecution's case"].)

Furthermore, the trial court instructed the jury on the limited purpose of the evidence, advising jurors that they were not to infer appellant had a criminal disposition and emphasizing that the People were required to prove each element of the charged offenses beyond a reasonable doubt,

17

regardless of appellant's prior offense.[8]  (*People v. Romero and Self* (2015) 62 Cal.4th 1, 28 [jury presumed to understand and follow court's limiting instruction].)  In appellant's closing argument, his counsel emphasized the limited significance of appellant's prior conviction, noting its age and reminding jurors they could not rely on it to convict appellant simply because his prior conviction was "in the same . . . category of crimes" as the charged offenses.

Pointing to his acquittal of the charges relating to the firearms in the dresser drawers, appellant contends the only difference between the evidence supporting those charges and that supporting the drug possession charges was his prior conviction for possession of drugs for sale.  He argues this shows the jury relied on his prior conviction to conclude he knew about the drugs in the garage.  Appellant overlooks another, more significant difference between the drugs and the firearms.  As we detail below in discussing appellant's sufficiency challenge, circumstantial evidence suggested appellant was involved in the drug-sale operation.  It was eminently reasonable to infer that as a seller, appellant was aware of the drugs in the garage.  But the jury also heard evidence suggesting many other possible sellers at the

---

[8]     Appellant does not challenge the trial court's limiting instruction as overbroad.  Regardless, even assuming the court's instruction insufficiently narrowed the matters for which the jury could consider appellant's prior conviction, any such error would have been harmless for the other reasons establishing that the admission of appellant's prior conviction was harmless.

18

garage and the adjoining house. A few of these other persons either resided at the house or were related to a person who did. One of the potential sellers, Samuel Farrell, was found with drugs in the house, consistent with information Detective Delling had received before the search that a potential seller named Sam was at the location. Thus, the jury could have concluded that appellant was only a subordinate in the drug-sale operation, aware of the merchandise but not necessarily aware of guns in the drawers. In short, we are satisfied it is not reasonably probable appellant would have obtained a more favorable outcome absent the admission of his prior conviction. (See *Watson*, *supra*, 46 Cal.2d at 836.)

## B. *The Sufficiency of the Evidence*

Appellant argues that the evidence was insufficient to support his drug-related convictions and that the trial court erred in denying his motion for a judgment of acquittal. "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although

19

it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054 (*Kraft*).) A trial court applies the same standard in ruling on a motion for judgment of acquittal, and we review the trial court ruling de novo, applying the same substantial evidence standard. (*People v. Dalton* (2019) 7 Cal.5th 166, 249.)

As noted, to prove the possession of drugs for sale, the prosecution was required to show, among other things, that appellant knew of both the presence of the substances and their narcotic character. (*Ghebretensae, supra,* 222 Cal.App.4th at 754; *Meza, supra,* 38 Cal.App.4th at 1745-1746.) Appellant argues there was insufficient evidence of his knowledge that the narcotics were present in the garage. He notes that most of the drugs in the garage were in the dresser drawers, that lines of view to the drugs not in drawers were somewhat obstructed (the cocaine base on the microwave was behind a lampshade and another item, and the cocaine near the refrigerator was among "clutter"), and that the garage was dimly lit when the deputies arrived.

Initially, given that appellant was able to move around the garage, as Detective Delling witnessed, the jury could reasonably infer he was able to see the cocaine and cocaine base outside the dresser drawers, despite the poor lighting

20

and partially obstructed views.  More important, however, the People presented significant circumstantial evidence that the garage was set up as a narcotics store, and that appellant was one of the sellers, thus necessarily aware of the drugs.  It is undisputed that the deputies arrested appellant in the midst of an obvious drug-sale operation.  An inward-facing dresser in the garage contained firearms and most of the hard drugs, and was placed next to a headboard so as to form a makeshift checkout counter.  On top of the dresser were marijuana, unused baggies, digital scales, and even a tip jar that contained money.  On a table within the counter area were two-way radios and scanners and a video surveillance monitoring system that allowed those in the counter area to view anyone approaching the premises.  As deputies approached the location, a lookout alerted the occupants of the house and garage to their presence.

The evidence relating to appellant suggested he was not merely an intended customer or a visitor who happened to be at the garage.  Detective Delling first saw appellant standing behind the dresser.  On appeal, it is undisputed that appellant was armed and had $451 in his pocket.  The money was in various denominations, including many small bills, in no discernible order.  Testifying as an expert on drug-sale practices, Detective Delling explained that drug dealers in similar settings generally do not permit customers to be armed, and opined it would be unlikely for someone not involved in the operation to be armed and standing behind the makeshift counter, where the drugs and much of the

money were located.  Detective Delling further opined that possessing $451 in various denominations in no discernible order was indicative of drug sales, as it appeared the money was collected over time, as the person was making sales. This evidence permitted the jury to conclude that appellant was involved in the drug-sale operation.  (Cf. *Meza, supra,* 38 Cal.App.4th at 1746 [it was unlikely persons involved in drug trafficking operation would allow uninvolved person to ride in a vehicle delivering cocaine worth $3 million]; *People v. Walker* (2015) 237 Cal.App.4th 111, 117 [possession of large amount of money in varied but mostly small denominations was consistent with intent to sell].)

Appellant contends neither the money nor the gun was sufficient to support that he was involved in the drug-sale operation.  As to the gun, he argues it did not rule out the possibilities that (1) unlike other drug-sale operations, this operation permitted visitors to bring guns, or (2) his gun was concealed, and the sellers were not aware of its presence. But the jury was entitled to reject these proposed interpretations of the evidence (*Kraft*, *supra*, 23 Cal.4th at 1053-1054); indeed, the jury could reasonably have concluded that no uninvolved person, armed or otherwise, would be allowed behind the counter at a sophisticated drug-sale operation.

Appellant cites *People v. Antista* (1954) 129 Cal.App.2d 47 (*Antista*) and *People v. Glass* (1975) 44 Cal.App.3d 772 (*Glass*) in support of his position.  Each is distinguishable.

In *Glass*, the court reversed a conviction for possession of drugs for sale, where officers found the drugs under a couch in the living room of the house in which the defendant was found. (*Glass, supra*, 44 Cal.App.3d at 774-775.) The defendant, who neither owned nor resided at the house, was found lying in bed in the bedroom. (*Id.* at 775, 776.) The court stated this evidence established "no more than an opportunity of access to a place where narcotics were found . . . ." (*Id.* at 777.) While the defendant had $270 in small bills in his wallet, the court determined the money lacked probative value absent a showing the defendant had been unemployed. (*Id.* at 775, 777.)

In *Antista*, the court reversed a conviction for simple possession where officers found marijuana in both the living room and an unused bedroom of the defendant's apartment. (*Antista, supra*, 129 Cal.App.2d at 48.) The defendant was not home at the time the drugs were found, but a friend who was a known drug user had been staying in the apartment for 10 days before the search and was in the home at the time police arrived. (*Id.* at 48-49.) The defendant had no known history of drug use, was a nonsmoker, and could not breathe deeply due to a medical condition. (*Id.* at 48.) The court stated, "if it is established that one accused of possession returned to his apartment . . . and found it occupied by a user of narcotics, and a narcotic was found in it, and if there is no evidence that it was there before that time, the fact of its presence, without any other fact or

23

circumstance of an incriminating nature, is legally insufficient to prove a charge of possession." (*Id.* at 53.)

In both *Glass* and *Antista*, the result reflected the straightforward proposition that the prosecution must show something more than the mere presence of controlled substances in the place where the defendant is found or to which he has access. The People have indeed shown more here. The evidence established that appellant was at the location of an active drug-sale operation, in an area where only a seller would typically be found, carrying an item -- the gun -- that only a seller would typically carry at the location, and possessing cash in an amount and composition typically indicative of drug sales.[9] Nothing more was required to support the jury's conclusion that appellant was involved in the sale of the drugs.

Appellant does not dispute that if he was one of the sellers, he must have known of the drugs present in the

---

[9] We are unpersuaded by appellant's emphasis of *Glass*'s conclusion that the defendant's possession of money there had no probative value. The evidence in *Glass* showed only that the defendant had a large sum of money in his wallet while lying in bed in someone else's house, where drugs were found but no drug sales were taking place at the time. (*Glass, supra*, 44 Cal.App.3d at 775-776.) In other words, the money had no apparent link to drug sales. By contrast, appellant carried the cash in his pocket, at a place where drug sales were clearly taking place, and the money contained various denominations in no apparent order, suggesting, as Detective Delling opined, that appellant was pocketing money as he was making sales.

garage.  Accordingly, we find the evidence sufficient to support the jury's verdict.

### C. *The Sealed Portion of the Search Warrant Affidavit*

#### 1. *Background*

A portion of the affidavit accompanying the search warrant in this case was filed under seal.  Before trial, appellant moved to unseal, quash, and traverse the search warrant and to suppress all evidence found during the search of the garage.  After conducting an in camera review under the procedures of *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*), the court denied appellant's requests.  The Court found the relevant information had been properly sealed, and that continued sealing was necessary to protect the identity of confidential informant(s).  It further found the public and sealed materials did not support the request to quash and traverse the warrant.

#### 2. *Analysis*

Appellant asks us to review the sealed portion of the search warrant affidavit and determine whether the trial court erred in denying his motions to unseal that portion and to quash and traverse the search warrant.  The Attorney General does not oppose his request for review.

Any part of a search warrant affidavit may be sealed if necessary to protect the identity of a confidential informant. (Evid. Code, § 1041; *Hobbs, supra,* 7 Cal.4th at 971.)  When

25

that happens, and the defendant moves to traverse or quash the warrant, the trial court must conduct an in camera hearing following a two-step procedure established in *Hobbs*. The first step is for the court to determine whether, and to what extent, the sealed portion should remain sealed to protect the identity of the informant. (*Hobbs*, *supra*, at 972.) "If there is no longer any reason to protect the identity of the informant . . . the court should then order the prosecutor to release the sealed portion [or suffer an adverse ruling]." (Caskey, Cal. Search & Seizure (2020) § 3:35.) We review the trial court ruling on a motion to unseal a search warrant affidavit for an abuse of discretion. (See *Hobbs*, at 976.)

If the court determines any portion of the affidavit should remain sealed, it then proceeds to the second step, which "requires the court to determine whether 'there is a reasonable probability the defendant would prevail' on his suppression motion." (*People v. Heslington* (2011) 195 Cal.App.4th 947, 957.) If the defendant moved to traverse the warrant, the court must determine whether the defendant's general allegations of material misrepresentations or omissions are supported by the public and sealed portions of the affidavit. (*Hobbs*, *supra*, 7 Cal.4th at 974.) For the defendant to succeed on this claim, it must be shown that "(1) the affidavit included a false statement made 'knowingly and intentionally, or with reckless disregard for the truth,' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" (*Ibid.*)

26

If the defendant moved to quash the warrant, the court must evaluate the affidavit's showing of probable cause under a similar procedure. (*Hobbs*, *supra*, 7 Cal.4th at 975.) The court must assess "whether, under the 'totality of the circumstances' presented in the search warrant affidavit . . . there was 'a fair probability' that contraband or evidence of a crime would be found in the place searched pursuant to the warrant." (*Ibid.*) "'[T]he warrant can be upset only if the affidavit fails as a matter of law . . . to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause . . . .'" (*Ibid.*)

Having reviewed the sealed portion of the search warrant affidavit, we find no error in the trial court's denial of appellant's motions. The trial court did not abuse its discretion in determining that valid grounds supported maintaining the confidentiality of information in the sealed portion, and that the extent of the sealing was necessary for that purpose. Moreover, it is not reasonably probable that appellant would have prevailed on his motion to traverse or quash the warrant. Nothing in the affidavit leads us to suspect any material misrepresentations or omissions were made. And under the totality of the circumstances, there was a fair probability that execution of the warrant would lead to contraband or evidence of a crime at the location to be searched.

**D. *The Separate Sentences for Appellant's Drug-*
*and Firearm-Related Convictions***

Appellant contends that his separate sentences for possession of methamphetamine, cocaine, and cocaine base for sale, possession of each of those substances while armed, and possession of a firearm by a felon, are precluded by Section 654.

### 1. *Governing Principles*

Section 654, subdivision (a), provides: "'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The starting point of a Section 654 analysis is to determine whether the "different crimes were completed by a 'single physical act.'" (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*), citing *Jones, supra,* 54 Cal.4th at 358.) "If so, the defendant may not be punished more than once for that act," regardless of the defendant's intent and objective. (*Id.* at 359.) "Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single "'intent and objective'" or multiple intents and objectives." (*Ibid.,* citing *Jones,* at 359.) "Whether a defendant will be found to have committed a single physical act for purposes of [S]ection 654 depends on whether some action the defendant is charged with having taken

28

separately completes the actus reus for each of the relevant criminal offenses." (*Id.* at 313.) When the facts are undisputed, the application of Section 654 raises a question of law we review de novo. (*Corpening*, at 312.) We review any factual findings underlying the trial court's ruling for substantial evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)

In *Jones, supra*, 54 Cal.4th at 359-360, our Supreme Court clarified that the inquiry into whether a defendant's conduct reflects a single intent or objective is relevant only after it has been determined that a single act did not complete each of the relevant crimes. The defendant there had been sentenced concurrently for three crimes: "possession of a firearm by a felon," "carrying a readily accessible concealed and unregistered firearm," and "carrying an unregistered loaded firearm in public." (*Id.* at 352.) All three offenses were committed on a single occasion, when the defendant, a convicted felon, carried in his car a loaded revolver that was not registered to him. (*Ibid.*) Reversing the imposition of separate punishments, our Supreme Court held that "a single possession or carrying of a single firearm on a single occasion may be punished only once under [S]ection 654."[10] (*Id.* at 357.)

---

[10] The *Jones* court clarified that it did not intend to upset the established rule that "'simultaneous possession of different items of contraband'" constitutes separate acts that may receive multiple punishments under Section 654. (*Jones, supra*, 54 Cal.4th at 358 ["We do not intend to cast doubt" on cases holding
(*Fn. is continued on the next page.*)

In separate opinions, Justices Werdegar and Liu agreed the defendant could not receive multiple punishments but relied on their conclusion that the defendant had only a single objective in committing all three offenses. (*Jones*, *supra*, 54 Cal.4th at 361 (conc. opn. of Werdegar, J.); *id.* at 375 (conc. opn. of Liu, J.).) The majority declined to adopt the concurring justices' approach, responding, "Rather than force the court to divine what objective or objectives the defendant might have had in possessing the firearm, we find it better to rely on [S]ection 654's actual language in resolving this single-act case." (*Id.* at 360.)

Our Supreme Court in *Jones* considered the Attorney General's alternative argument that the defendant had committed his offenses through separate acts. The Attorney General noted the defendant had told the police he had obtained the gun three days before it was found in his car, and had kept it at his grandmother's house. (*Jones*, *supra*, 54 Cal.4th at 359.) Rejecting this argument, the court noted that the information had alleged defendant committed all three crimes on or about the day he was arrested, that the verdicts had found defendant guilty as charged, and that the prosecutor's closing argument based defendant's guilt on his possessing the gun when arrested. (*Ibid.*) Thus, the court concluded the record established "that the jury convicted

---

that possession of each separate item is separate act of possession].)

30

defendant of each crime due to his being caught with the gun in the car on [the day of his arrest], not due to any antecedent possession." (*Ibid.*; accord, *People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339 ["where there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying [S]ection 654"].) As discussed below, *Jones* controls the outcome in this case and instructs that under Section 654, appellant may not receive multiple punishments for his possession of each controlled substance (both for sale and while armed) and may not receive multiple punishments for his possession of a firearm (while possessing each of the controlled substances and as a felon).

### 2. *Analysis*

#### a. *Possession of the Drugs*

Appellant's possession of each controlled substance constituted a single physical act that completed two offenses: (1) possession of the relevant substance for sale, and (2) possession of the relevant substance while armed. (See *Corpening*, *supra*, 2 Cal.5th at 311; *Jones*, *supra*, 54 Cal.4th at 357-358.) Accordingly, appellant may not receive more than one punishment for the possession of each substance. (See *Corpening, supra*, at 311; *Jones, supra*, at 357; cf. *People v. Buchanan* (2016) 248 Cal.App.4th 603, 613 (*Buchanan*) ["When police officers discover a defendant in an automobile in possession of a controlled substance, [S]ection 654 applies to preclude separate punishments for the same

act of transporting for sale the controlled substance and possessing it for sale"].)

In his initial appellate brief, the Attorney General contended appellant could receive two punishments for the possession of each controlled substance (for sale and while armed) because he "harbored an independent criminal objective when he possessed the revolver." After we sent the parties a letter directing their attention to *Jones* and its progeny, the Attorney General filed a supplemental brief, conceding that appellant may receive only one punishment for the possession of each controlled substance (whether for sale or while armed). We accept the Attorney General's concession. Our Supreme Court in *Jones* refused to "divine what objective or objectives the defendant might have had in possessing [an item]" in a "single-act case." (*Jones, supra,* 54 Cal.4th at 360.) Thus, under *Jones*, where a single physical act completes two crimes, the defendant may not be punished more than once for that act, regardless of his objective. (*Id.* at 359; *Corpening, supra*, 2 Cal.5th at 311 ["Only if we conclude that the case involves more than a single act . . . do we then consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives"].) Appellant may not be punished more than once for the possession of each controlled substance.

### b. *Possession of the Firearm*

The jury found that appellant possessed a single firearm (the revolver) when deputies found him in the garage. This single physical act completed multiple crimes: possession of each controlled substance while armed (a total of three counts), and possession of a firearm by a felon. Under *Jones*, appellant may receive only one punishment for the possession of the firearm.[11] (See *Corpening, supra,* 2 Cal.5th at 311; *Jones, supra,* 54 Cal.4th at 357; cf. *Buchanan, supra,* 248 Cal.App.4th at 613-617 [where defendant possessed one firearm on single occasion, Section 654 precluded separate punishments for possession of firearm by felon and four enhancements for being armed in commission of narcotics offense; defendant could be punished for only one enhancement, and could not be punished for possession of firearm by felon (which carried shorter sentence than enhancements)].)

The Attorney General raises two arguments in support of the contention that Section 654 does not preclude multiple punishments for appellant's firearm-related offenses. First,

---

[11]    For the first time at oral argument, appellant argued that section 654 precludes *any* punishment for his possession of the firearm, asserting the separate acts of possession of a firearm and possession of drugs were pursued with the single objective of selling drugs. His failure to raise this contention in his briefs constitutes forfeiture on appeal. (See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 ["We do not consider arguments that are raised for the first time at oral argument"].)

33

the Attorney General points to the trial court's finding -- in deciding to impose a consecutive sentence for the possession of a firearm by a felon -- that appellant brought the revolver with him to the garage.  This finding, the Attorney General argues, supports the conclusion that appellant's possession of the revolver was a separate act that occurred before his possession of the drugs.  While valid in theory, this argument fails for the same reason the Attorney General's similar argument in *Jones* failed.  As in *Jones*, the information alleged appellant possessed the firearm (both while possessing the drugs and as a felon) on or about the day of his arrest, and the verdicts found him guilty as charged.[12]  (See *Jones*, *supra*, 54 Cal.4th at 359.)  As in *Jones*, the People's closing argument focused exclusively on appellant's possession of the firearm at the time of his arrest, rather than at any previous time.[13]  (See *ibid*.)  Thus,

[12]    Here, the information alleged appellant committed each of his offenses on or about February 16, 2018.  Deputies found appellant in the garage and arrested him on that day at around 1:30 am.

In his supplemental brief, the Attorney General asserts "[t]he information did not specify when appellant first acquired the revolver . . . ."  While this is true, the information did specify when appellant allegedly *committed* the offense of possession of a firearm by a felon.  As in *Jones*, this allegation served as the basis for the jury's verdict.  (See *Jones*, *supra*, 54 Cal.4th at 359.)

[13]    In connection with the possession of a firearm by felon, the prosecutor stated, "[I]f you believe the deputy that he saw a gun coming out of [appellant's] pocket, [he's] guilty [of] felon with a
(*Fn. is continued on the next page.*)

34

as in *Jones*, the record established "that the jury convicted [appellant] of each crime due to his being caught with the gun in the [garage] on [the day of his arrest], not due to any antecedent possession."[14] (*Ibid.*)

Second, citing *People v. Vang* (2010) 184 Cal.App.4th 912 (*Vang*), the Attorney General argues the crimes of possession of controlled substances while armed and possession of a firearm by a felon address distinct dangers. Decided some two years before *Jones*, *Vang* applied this reasoning to hold that Section 654 did not preclude separate punishments for these offenses, even though the defendant possessed only a single firearm on a single occasion. (*Vang, supra*, at 917.) Yet this rationale -- that multiple punishments are "appropriate where a single act is punishable under multiple statutes directed at distinct evils" -- "cannot survive *Jones*." (*People v. Chung* (2015) 237 Cal.App.4th 462, 471.) Given our Supreme Court's holding

---

firearm . . . [. E]ven if you don't believe the deputy . . . but you still believe that [appellant] knew about the guns, then he's still guilty of felon with a firearm."

[14] The Attorney General's position in *Jones* was actually stronger than it is here, as the defendant there admitted having purchased the gun three days before his arrest. (See *Jones, supra*, 54 Cal.4th at 359.) No similar evidence existed here. Nor do we agree that the presence of two other firearms in the dresser drawers gave rise to an inference that appellant must have brought the revolver with him when he arrived at the garage or the adjoining house (a date and time the record does not disclose).

35

in *Jones*, *Vang* is no longer good law.[15]  As in *Jones*, appellant's "single possession . . . of a single firearm on a single occasion may be punished only once under [S]ection 654." (*Jones, supra*, 54 Cal.4th at 357.)

Accordingly, we vacate appellant's sentence and remand for resentencing.  We do not constrain the trial court's discretion in fashioning an appropriate sentence in accordance with Section 654's directives.  We observe, however, that because appellant's convictions for possession of controlled substances while armed involve the possession of both the drugs and the firearm, those convictions cover the same acts covered by his other drug- and firearm-related offenses, thus implicating Section 654.  If appellant is punished on remand for possessing a controlled substance for sale, he may not also be punished for possessing the same substance while armed.  Similarly, if appellant is punished

---

[15]     *Vang* relied in large part on *People v. Harrison* (1969) 1 Cal.App.3d 115 (*Harrison*), a case expressly disapproved by the Supreme Court in *Jones*.  (See *Vang, supra*, 184 Cal.App.4th at 916-917 [discussing *Harrison*].)  *Harrison* had upheld separate punishments for (1) possession of a concealable firearm by a felon and (2) carrying a loaded firearm in a vehicle, even though both crimes involved the same firearm.  It reasoned that the "two statutes strike at different things" and that the defendant had multiple objectives in committing his criminal conduct. (*Harrison, supra*, at 122.)  As noted, this reasoning is inconsistent with *Jones*'s holding that Section 654 permits only one punishment for the possession of a single firearm on a single occasion.  (*Jones, supra*, 54 Cal.4th at 357 ["Accordingly, we disapprove *People v. Harrison*"].)

36

for the possession of a firearm by a felon, he may not also be punished for possessing any controlled substance while armed (but may be punished for possessing the controlled substances for sale).

### E. *Constitutional Challenge to Assessments and Restitution Fine*

Appellant challenges the trial court's imposition of the assessments and restitution fine. Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, he argues the court violated his right to due process by imposing them without determining his ability to pay.

Before the trial court, appellant neither objected to the imposition of these financial obligations nor requested a hearing on his inability to pay. We agree with our colleagues in Division Eight that a failure to object in the trial court forfeits this issue on appeal. (See *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155; accord, *People v. Keene* (2019) 43 Cal.App.5th 861.) Accordingly, we do not consider appellant's contentions. We observe, however, that appellant remains free to raise his claims in this regard before the trial court on remand.

## DISPOSITION

The sentence is vacated and the matter remanded for a new sentencing hearing consistent with this opinion.  The judgment is otherwise affirmed.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.

38